RASBERRY *v.* HARVILLE *et al.*

1. Where, pending an appeal to the superior court from a judgment of the court of ordinary establishing a will propounded for probate in solemn form, the caveators, who were the appellants, attempted in vacation, by an entry on the docket made by the clerk at their instance, to withdraw their appeal, and afterwards the superior court, in term, passed an order reciting such attempted "withdrawal" and directing that the appeal be withdrawn and dismissed, the effect of this order was to dismiss the appeal and leave the judgment of the court of ordinary in full force. If the judgment of the superior court was unauthorized, for want of consent by the adverse party, it was merely erroneous and not void, and is binding till properly set aside. After it was rendered, no case was pending in the superior court, and counsel for the propounder could not then, in vacation, by letter to the clerk, dismiss the "case" or "cause of action" and thus set aside the judgment of the court of ordinary admitting the will to probate.

2. Where, by one item of a will made July 10, 1863, the testatrix bequeathed to a brother, who was also nominated executor of the will, all her personal property except one slave, and by the next item devised to the wife of this brother, "in her own right," certain described real estate "where she and her husband and family

now reside," the will should be construed as creating in the wife a separate estate in this realty free from the marital rights of the husband, notwithstanding that by another item certain other realty was devised to a married niece of the testatrix "in her own right, free from the debts and contracts of her present or any future husband."

3. Under the facts of this case, no title to the premises in dispute arose by prescription in favor of the husband as against the wife; nor did her acceptance of, and assertion of title under, a deed from him, conveying to her for life, with certain remainders over, the premises upon which they resided together when the deed was executed and for many years thereafter until his death, both believing the property belonged to him by inheritance from his deceased sister, and both being ignorant of the fact that this sister had by will devised it to the wife as a separate estate, the will not having been discovered and admitted to probate till after the husband's death, estop the wife from claiming the property as her own under the will.

4. The verdict being contrary to law, cannot be sustained, and the court did right in setting it aside.

November 9, 1892.

Probate of will. Judgment. Estate. Husband and wife. Title. Estoppel. Before Judge MARSHALL J. CLARKE. Fulton superior court. March term, 1892.

The following is a statement of all the facts necessary, or material, to a proper understanding of the points ruled in this case :

Jasper Smith died intestate in Cobb county in 1862, leaving an estate in which was included the land in controversy in the present case, and his widow, Celia Ann Smith, was his only heir at law. On August 1st, 1863, Mrs. Smith (who was the aunt of Mrs. Rasberry, the complainant, and the sister-in-law of Mrs. Harville, one of the defendants in this suit) died in Cobb county, Georgia, leaving a will dated the 10th of the preceding month, in which Wm. H. Harville, brother of the testatrix, was named as executor. In the third item of the will he is also made one of its beneficiaries, and to him is bequeathed all the personal property of the deceased, except one slave. The fourth item of the will disposes

of the property now in controversy, as follows: "I give and devise to my sister-in-law Lucinda, wife of brother Wm. H. Harville, in her own right, my lot situated on Decatur street, city of Atlanta, Fulton county, Ga., where she and her husband and family now reside." By the sixth item, Mrs. Rasberry is devised certain property "in her own right, free from the debts and contracts of her present or any future husband." These constitute such portions of the will as are material to an understanding of the present litigation.

It appears, however, that the execution of this will was unknown to any of the beneficiaries named therein till after this litigation had begun, and accordingly, Wm. H. Harville, who was the sole heir at law of the deceased Mrs. Smith, assumed possession of her entire estate, including the property now in dispute, of which he was already in possession at the time of her death. He retained such possession until July, 1878, when he obtained letters of administration upon the estates of both Jasper and Celia Ann Smith, and as administrator of the latter, receipted to himself as administrator of the former, for all the property left by Jasper. He then, as administrator of Mrs. Smith, obtained an order from the court of ordinary of Fulton county to sell the property for distribution, and did sell a portion thereof, but continued in possession of the premises in dispute till his death, which occurred in 1880. On July 10th, 1871, he made a deed conveying this property to Mrs. Lucinda R. Harville, his wife, "during his and her joint lives, to revert to him if he survive her, and remainder to their children living at her death, if she survive him." This deed, however, was not recorded until August 12, 1880, two days before the grantor's death.

In February, 1884, Mrs. Rasberry, claiming under this deed as the daughter and only surviving child of the grantor by a previous marriage, filed her bill, alleg-

ing, in brief: Her father had married a second wife, by whom he had four children. In June, 1871, he employed an attorney to prepare a deed conveying the property in question to his said wife and children. Upon the attorney presenting the deed to him for signature, her father refused to sign it, saying it was written in such a way as to leave out his children by his first wife, which was not his intention. The attorney said he could remedy this defect by a writing on the back of the deed which would set out the intention of the grantor, and which his wife could sign. This was accordingly done. Subsequently, however, while the deed was in the possession of grantor's wife, some one, wrongfully and with the fraudulent intent of depriving complainant of her rights under the deed, erased the writing on the back, and had said deed recorded, leaving off the record said writing.

The defendants named in the petition (Mrs. Harville, the second wife of the grantor, and her four children) filed their answer denying the allegations in complainant's petition as to the refusal of the grantor to sign the deed as first drawn, and alleging, on the contrary, that he accepted the deed as drawn as expressing his true intention, took the same home from his attorney's office, and delivered it to his wife; that it was over two years afterwards, when he became very ill, that grantor first expressed a wish to have his children by his first wife share in the property thus deeded; that he sent for his attorney, explained this wish to him, and asked that the deed be changed in accordance therewith; and it was then the writing spoken of as having been on the back of the deed was prepared by the attorney, and signed by Mrs. Harville at her husband's request; that the grantor, having subsequently expended a large amount of money in the support of complainant and her children and a son by his first wife who had become

very dissipated, expressed his intention of having the writing on the back of the deed erased so they would not share in the property with his children by his second wife, but though he often spoke of it, he neglected it until his last illness in August, 1880, when he requested his wife to get the deed and give it to his attending physician for record. He requested the physician to erase the writing on the back of the deed, have the deed recorded, and then deliver it to his wife; this the physician did.

Subsequently to the bringing of this suit, the will of Mrs. Celia Ann Smith, above referred to, seems to have been found, but by whom does not appear; and on October 8th, 1884, Mrs. Rasberry filed her petition in the court of ordinary of Cobb county, setting up the will and praying that the same be established in solemn form and admitted to probate. This proceeding was resisted by Mrs. Harville and others, but at the December term of said court the will was duly admitted to probate. Mrs. Harville thereupon appealed to the superior court, and while this appeal was pending in that court, attempted in vacation to withdraw the same by having an entry to that effect made on the docket by the clerk. Afterwards, on March 27, 1888, the superior court in term passed an order reciting such attempted "withdrawal" in vacation, and directing that the appeal be withdrawn and dismissed. The same proceedings were had with reference to two other appeals which had been filed by other parties caveating the will. In 1892, the attorney of Mrs. Rasberry addressed a letter to the clerk of Cobb superior court, stating that he had learned the clerk had not entered on his docket the dismissal of the suits brought for Mrs. Rasberry setting up the will of Celia Ann Smith, and directing him to "make such entry as of the date when we notified you we had dismissed the cases, which was over one year ago."

The clerk thereupon made entries of dismissal on the docket of all the cases, but it does not appear that any further action was taken in the matter by the superior court.

On March 27, 1888, Mrs. Harville amended her answer, alleging, among other things not now material, that since the filing of her first answer in the present litigation, the complainant had established and proved in solemn form the will of Celia Ann Smith, by which will the property now in dispute was devised to respondent absolutely as sole owner thereof; that she was ignorant of the existence of this will until said proceedings were begun by complainant, and now claims title under the same against the claim of complainant.

WESTMORELAND & AUSTIN and E. W. MARTIN, for plaintiff.

G. A. HOWELL, BROYLES & SON and R. L. SIBLEY, for defendant.

LUMPKIN, Justice.

1. The attempt of Mrs. Harville to withdraw in vacation her appeal from the judgment of the court of ordinary establishing the will of Mrs. Smith, amounted to nothing, for the code (§3629) expressly forbids the withdrawal of an appeal except by consent of the adverse party. When, however, the superior court, in term time, passed an order referring to the attempted "withdrawal" in vacation and adjudging that the appeal be now withdrawn and dismissed, it had the jurisdiction and authority to pass such order; and nothing appearing to the contrary, it will be presumed that the necessary consent of the adverse party was obtained. If, in point of fact, this was not true, it would simply follow that the judgment of the superior court was erroneous for want of such consent, but not that the judgment itself was void. If proper steps had been taken within

the time prescribed by law for setting this judgment aside, and it had been made to appear to the court that the opposite party had not consented to the withdrawal of the appeal, the court for this reason would doubtless have vacated the judgment. Nothing of this sort having been done, the judgment of dismissal necessarily remained of full force, and its effect was to affirm the judgment of the court of ordinary establishing the will. See Code, §3628. After the appeal had been dismissed by the superior court, and the term at which this was done had ended, no "case" or "cause of action" was left pending in that court upon which further action could be taken; and consequently, the effort of the propounder, after the lapse of years, to dismiss the main case by a direction to the clerk to make an entry to that effect on the docket in vacation, was futile and abortive; nor is it material that this direction referred to one previously given to which the clerk had paid no attention. *The Chattanooga, &c. R. R. Co.* v. *Jackson,* 86 *Ga.* 676, which was a well-considered case, is authority for the rulings now made. The facts of that case, so far as the question now under consideration is concerned, are quite similar to those in the case at bar. They differ, however, in two essential respects: first, under the law of Tennessee, an appeal *vacates* the judgment of the court below, but in this State only *suspends* it; and second, in the case cited, the judgment of the circuit court dismissing the main case was rendered at the same term at which the order was passed dismissing the appeal, while in the present case, the main case was never dismissed by any order of the court at all, nor was any attempt made to dismiss it till after there had passed many terms of the court subsequent to that at which the appeal was withdrawn. In the case mentioned, this court simply held that the order dismissing the case from the circuit court was not void, but was

merely irregular and erroneous, and that the effect of it was to vacate the order previously passed during the same term dismissing the appeal. This latter conclusion was based upon the well-settled doctrine that during the term the court has authority, not only to modify, but also to reverse or set aside any of its judgments then rendered. Following the principle announced in that case, we hold that the order of Cobb superior court allowing the appeal to be withdrawn was not void, and that never having been duly set aside, it is binding on all concerned.

It results, from what has been said, that the will of Mrs. Smith was duly set up and established, and the rights of the parties to the present litigation must be determined accordingly.

2. In whom, then, under the provisions of this will, did the title to the land in controversy vest? The will took effect from the time of the death of the testatrix (which occurred before the passage of what is commonly and familiarly known as the "woman's law"), although it was not admitted to probate until many years afterwards. Code, §2398. It must therefore be construed and interpreted with reference to the law as understood and enforced in 1863. It cannot be doubted that a married woman could then own and control a separate estate free from the marital rights of her husband, without the intervention of a trustee; but in order to prevent the marital rights of the husband from attaching, it was necessary for the instrument conveying the property to contain words clearly showing it was intended the wife should have a separate estate to the exclusion of the husband. Neither the technical words "sole and separate use," nor any other formal words, were necessary to accomplish this purpose, provided the language used was adequate to manifest a decided and unequivocal purpose to create such a separate estate in the wife.

This proposition is supported by decisions of this and other courts, almost innumerable, and by all standard text-writers on the subject. _The question therefore is, does the will now before us plainly manifest such an intention on the part of Mrs. Smith? In our opinion, it does. She provided for her brother in a separate and distinct item from that in which she made the devise to his wife, by giving him the most of her personal property. If she had intended he should also have the land, it would have been most natural to have said so in the item by which she bequeathed to him the personalty. Not having done this, we think the words " in her own right," used in connection with the devise to his wife, are entitled to much greater weight in determining the intention of the testatrix than they would ordinarily receive. Again, the will speaks of the property given to Mrs. Harville as that " where she and her husband and her family now reside," thus giving her a prominence with respect to the disposition of this property which at least amounts to an intimation that she should be its sole owner. There would be very little difficulty in reaching the conclusion that Mrs. Smith so intended, were it not for the fact that in another item of the will she devised other realty to a married niece " in her own right, free from the debts and contracts of her present or any future husband." It was argued that by the use of these words it was manifest that Mrs. Smith knew how to employ language excluding the husband when she so desired; but this is attributing to her a better knowledge of the meaning and use of technical legal terms of conveyance than she probably possessed. For instance, the significant and unequivocal words "control" or " marital rights " with reference to the husband of her niece were not used. The words " free from the debts and contracts," etc., did not in fact add anything to the estate which would have been created in the niece

if they had been omitted.   In construing a will containing a devise to a married woman, and searching for the true intention of the maker, a recognized test in determining the nature of the estate conveyed is, whether the language used would negative the idea of any use or benefit accruing therefrom to the husband.   The words last quoted afford little assistance in arriving at a correct solution of the question presented in the present case.   In themselves, they do not constitute any denial of the right of the husband to share in the benefits to be derived from the devise, nor imply that the estate is to be enjoyed by the wife to his entire exclusion, nor do they unequivocally negative the idea that he is to exercise any control over the property devised, but simply place a limitation upon such control, by preventing his binding or encumbering the estate by any of his debts or obligations.

Of course, it can never be known with absolute certainty what passed in the mind of Mrs. Smith when she was making her will.   It may be that her knowledge of and confidence in her brother caused her to consider it unnecessary to provide that what she gave his wife should be free from his debts and contracts.   Indeed, while she intended to convey this property absolutely to the wife, she may have designedly refrained from placing any restriction upon the right of the wife to alienate the interest conveyed for any purpose she might choose, including that of aiding her husband by using her separate estate in paying his debts.   On the other hand, as to the husband of the niece, there may have been no such confidence on the part of the testatrix, or willingness that the estate conveyed should ever be applied in the way indicated.   This, however, is mere conjecture, and we do not undertake to say with certainty why the language used in one case was a little more guarded than in the other.   We are satisfied,

however, in view of the entire will, that Mrs. Smith did intend to give Mrs. Harville a separate estate in the property devised to her exclusive of the control or marital rights of the husband. There is some difficulty in supporting a conclusion as to the construction of almost any will of doubtful meaning by pure logic or analytical reasoning. Every will is a law unto itself, and the particular intention it seeks to express is what the courts undertake to ascertain. This is the cardinal rule on the subject; and endeavoring to follow it, we have stated our best judgment as to the meaning of the will in question.

3. Had Mrs. Rasberry's construction of the will been correct, her claim to an interest in the property in dispute would have been perfectly consistent both with the will itself and with the deed from her father, if reformed in accordance with her prayer. Her contention being that the will devised the property in dispute to her father, and not to his wife, she is, from her standpoint, really claiming under, and not against it, and therefore she would not be estopped by reason of the fact that she had caused the will to be probated and established in solemn form. The difficulty about her case is, that the will did not convey the property to her father, and consequently he could not, by deed, convey to her an interest in it unless he obtained title to it otherwise than through the will. This brings us to her next contention in the case, viz: that her father acquired title to the land by prescription, and that Mrs. Harville, by accepting a deed from him and asserting title under it, was estopped, both as to herself and as to her children named in and claiming under the deed, from denying the title of the grantor.

In reply to this contention it may be said, in the first place, that there is nothing in the idea that Mr. Harville ever acquired title by prescription. He did

not have adverse possession of the property for twenty years, nor did he hold the premises under color of title for seven years, for he had no color of title at all. It will be observed that he did not obtain administration on the estates of Jasper and Celia Ann Smith till 1878; and if his receipt as administrator of Mrs. Smith to himself as administrator of Mr. Smith for the estate of the latter could in any possible view be regarded as color of title, he could not have had seven years' possession after obtaining it, for he died in 1880. It does not appear from the record that after the estate of Mrs. Smith had been administered he ever held under a deed or other evidence of title; but granting that after the winding up of her estate he entered into possession as heir at law and had color of title, what is said above would still be true, for his possession could not possibly have endured for a period longer than one or two years.

Nor do we think that the contention that Mrs. Harville was estopped as above alleged, can be maintained under the facts of this case. It is true she accepted a deed from her husband to these premises, and claimed title under it; but this was done when both he and she were in total ignorance, not only of the contents, but of the very existence of Mrs. Smith's will. She and her husband both honestly believed that he owned the property as sole heir of his deceased sister, and Mr. Harville died without ever having been informed to the contrary. There is certainly no rule of law which will estop one from setting up a clear legal right with which he has but recently become acquainted, on the ground that he had previously, when in total ignorance of the existence of such right, asserted a claim inconsistent with and antagonistic to that upon which he now relies. The soundness of this assertion is apparent without argument or illustration, for the statement of the proposition negatives in itself any idea of election.

4. We have, with great care and pains, prepared and handed to the reporter as clear and concise a statement of the material facts involved in this litigation as we are able to make. It will appear in the report of the case. In view of these facts and the law applicable thereto, there could not possibly be a legal recovery in favor of Mrs. Rasberry. The verdict, therefore, was contrary to law and could not properly be sustained, and the court did right in setting it aside.

*Judgment affirmed.*