Turner *v.* Cates *et al.,* and *vice versa.*

1. While in 1881 a judge of the superior court did not have the authority, in vacation, before the appearance term of a bill in equity, to pass an order sustaining a demurrer thereto and dismissing the bill, and would not now have such authority as to an equitable petition, yet when a judge did then in fact pass an order of this kind, which was afterwards entered on the minutes, and at the next term passed another order reciting that the bill had been dismissed on demurrer and rendering judgment for costs against the complainants, the latter order was a valid judgment dismissing the bill, and after the same had stood for more than three years without being set aside, a decree ignoring its existence and wholly incompatible with its legal effect would not be binding on the defendants, even though made with the consent of their counsel, unless he had express authority from them to give such consent; and this is true although counsel on both sides, after the rendition of the judgment of dismissal, had treated the case as still pending, and it had several times been continued, as shown by entries on the issue docket. The judgment, however, would not be an estoppel for or against persons who, though interested in the subject-matter of the litigation, were not parties to the case.

2. Where a bill in equity seeking to recover land was dismissed on demurrer alleging that there was no equity in the bill and that upon its face it showed no right in the complainants to such recovery, the dismissal was an adjudication in favor of the defendants as to all matters alleged in the bill; and it was their right, when an equitable petition was thereafter filed against them for the recovery of the same land by one who claimed under the former complainants and upon the same title, to set up this adjudication as a complete bar to the plaintiff's recovery.

3. Where one by voluntary deed conveys land pending an action brought by himself to recover it from another, his grantee takes the land subject to such charges and liens as may be properly and legally fixed thereon by the judgment rendered in that action; and of course, one to whom the grantor conveys after such judgment takes subject thereto.

4. When a deed has been lost, and the subscribing witnesses are unknown, proof of its existence and due execution may be made by any witness who knows the facts; and it was error to charge that, under these circumstances, such proof could be made only by the alleged maker of the deed.

5. Where an order was passed in term time, setting a motion for a new trial for a hearing in vacation at such time and place as the judge might appoint on five days' notice to both sides, and thereafter a day was fixed by the judge, but by consent of the parties the hearing was on that day postponed to a subsequent day, and then, without any further consent, again postponed by the judge to still another day, and no further action was taken on the motion until the next regular term of the court, when it was heard and decided on its merits, this court will not interfere with the discretion of the presiding judge in refusing to dismiss the motion on the ground that it was not heard on the day first appointed or on that to which by consent it was postponed. Under the order originally passed, the judge, by giving the notice specified therein, could appoint any day for the hearing; and if on the day assigned the motion for any reason could not be heard, it was within his power and discretion to postpone the hearing to such time as would suit the convenience of himself and counsel, and he was not bound to hold the parties strictly to the day first designated.

February 9, 1893.

Equity.    Practice.    Judgment.    Estoppel.    Vendor. Evidence.    Deed.    New trial.    Before Judge RICHARD H. CLARK.    Clayton superior court.    March term, 1892.

In 1876 J. S. Cook owned 75 acres of land in the 12th district of Clayton county, upon 50 acres of which

it seems he had taken a homestead as the head of a family consisting of himself, his wife, and one minor child named John Cook. On the 27th of July, 1876, a bill was filed by J. S. Cook, as such head of a family, against R. S. Cates, who in some way, not shown by the record, had obtained possession of the 75 acres of land. On the 5th day of March, 1877, while the above mentioned case was pending, J. S. Cook, by voluntary deed, conveyed 31 acres of the land to his grandchildren, the heirs of Ellsberry Cook, which deed was recorded Sept. 16th, 1884. At the March term, 1878, of Clayton superior court, a verdict and decree were rendered in the above mentioned case in favor of the plaintiff for the premises in dispute. and by this verdict and decree it was adjudged that W. L. Watterson, G. D. Stewart and J. T. Spence, as attorneys of R. S. Cates, should recover the sum of $50.00, and that it be made a special charge upon the land in controversy, to be enforced by *fi. fa.* against the premises; and also, that Jno. L. Doyal and Speer & Stewart, as attorneys of Cook and wife, recover, respectively, the sums of $50.00 and $80.00, that these sums be made a special charge upon the land in dispute, and if not paid by the 15th of November thereafter, the collection of the same to be enforced by execution against the land. This decree was signed on the 12th day of March, 1878. *Fi. fas.* were issued for the several amounts above stated, and, as appears from the execution docket, were levied upon the land, and afterwards returned to office on the 30th of January, 1879, marked settled by the sale of the land.

In the case now under review, Watterson, as a witness for plaintiff, testified that the sheriff's sale was regularly had after due advertisement under these *fi. fas.* on the first Tuesday in January, 1879, that the land was bid off by himself at the price of $225, which amount he paid to the sheriff, and that the latter made a deed con-

veying the land to himself (Watterson), Allen W.
Turner and W. E. Carnes. The sheriff's deed was
never recorded, and was subsequently lost, the fact that
it was made and proof of its existence depending upon
the parol testimony of Watterson, as above stated, he
being unable to remember who the subscribing witnesses
were. On the 17th day of May, 1880, J. S. Cook, by
voluntary deed, conveyed the remaining portion of the
·75 acres not previously conveyed to the heirs of Ells-
berry Cook, to his daughters, Susanna Cates, wife of
Green B. Cates, and Mrs. E. C. Hollingsworth. This
deed was recorded Sept. 12, 1883.

On the 20th of October, 1881, Watterson, Carnes and
Turner filed a bill against Green B. Cates and his wife,
setting up the alleged sheriff's sale, claiming title there-
under, and praying a recovery of the land from Cates
and wife who were in possession thereof. R. T. Dorsey,
as counsel for the defendants, filed a demurrer to this
bill, alleging in substance, (1) that there was no equity in
the bill; (2) that taking the bill and exhibits together,
they did not show that complainants had any legal right
to the land in controversy; and (3) that the complain-
ants did not exhibit their title. Judge HILLYER, in vaca-
tion, passed an order reciting that this case was argued
before him on the 3d day of November, 1881, that his
decision was reserved until the 16th of November, 1881,
and adjudging "that the demurrer filed in said case be,
and the same is hereby sustained, and the bill in said
case is hereby dismissed." Direction was given in the
order that it be entered on the minutes of Clayton supe-
rior court, which was afterwards done. Subsequently,
on the 28th of February, 1882, in term time, an order
·was passed in the above stated case to this effect : " This
case having been dismissed on demurrer, judgment is
entered by the court in favor of officers of court vs. the
complainants for the sum of thirty-four dollars and

ninety-seven cents for costs of suit." Both the chambers order and the order passed in term were duly signed by HILLYER, as judge, etc. The issue docket shows subsequent entries of continuances of this case in February and August, 1883, in September, 1884, and in March, 1885; and there is also on this docket this entry: "Decree Sept. 9th, 1885."

Before the decree above referred was taken, it appears that Carnes, on the 17th of December, 1883, had by deed conveyed his interest in the land in dispute to J. H. Turner as administrator of Allen W. Turner, deceased; and Watterson testifies that he also had, before the rendition of that decree, sold and conveyed his interest in the land to this administrator, but his deed to such administrator does not appear in the record.

The decree of September 9, 1885, was rendered in a case stated as "Carnes and Turner vs. Green B. Cates et al."; but it was the same case already referred to as having been brought by Watterson, Carnes and Turner. No order appears in the record striking the name of Watterson as a party complainant, nor does the record show that the death of Allen W. Turner, another of the complainants, was ever suggested, or that Jas. H. Turner, his administrator, was made a party in his stead. There was parol evidence, however, that the administrator had been so made a party. This decree, which appears to have been a consent decree, adjudicated that the title to the land in dispute was in Jas. H. Turner as administrator of A. W. Turner, deceased, but that the writ of possession be stayed until December 1st, 1885, and if payment of $260 be then made, the writ of possession be further stayed until the first day of December, 1886; and if $200 additional be then paid, the said administrator should execute titles to the land to the defendants, or to such person as they might direct. Upon failure to pay these sums, the writ of pos-

session was to be executed. Neither Mrs. Hollingsworth nor the heirs of Ellsberry Cook were parties to this case.

Upon a bill filed by Jas. H. Turner, as administrator of A. W. Turner, against M. E. Turner and others, for distribution, direction, etc., a decree was rendered at the April term, 1889, authorizing the administrator to sell the lands of the estate at private sale, either for cash or on credit, and without any order from the ordinary. In the spring of 1890, Paul Turner bargained with the administrator for the land now in dispute, and on November 12, 1890, the administrator conveyed it to him under the authority of the decree last mentioned.

During all this time it seems that Cates and wife, either in person or by tenant, remained in possession of the entire 75 acres, except that in January, 1889, one Driver (who was occupying the premises as the tenant of the Cateses) agreed with J. H. Turner, as administrator, who came to the place with the sheriff for the purpose of dispossessing Driver, that he would remain on the land as the tenant of Turner, and Driver gave Turner a rent note for the year 1890.

In February, 1891, Paul Turner filed an equitable petition against Cates and wife for the recovery of the 75 acres of land, alleging that J. H. Turner, as administrator, under whom he claimed, had been put in possession of the land in 1889 under the consent decree of September, 1885, and that Cates and wife had wrongfully ousted one Driver, who was, when they did so, Turner's tenant, and had unlawfully taken possession of the land themselves. In his petition Paul Turner claims title, generally, to the land, and relies specially upon the decree of September, 1885, and the alleged possession of Turner, administrator, thereunder, and though he does not distinctly set up or claim title through or by virtue of the alleged sale by the sheriff to Watter-

son, Carnes and Turner, above mentioned, the court and all the parties and counsel, on the trial, treated this as a matter involved in the litigation.

Cates answered, alleging that he and his wife were informed by their counsel, Dorsey, that the case above stated, in favor of Watterson, Carnes and Turner, was at an end after the orders passed by Judge HILLYER dismissing the bill, and therefore said attorney's employment was at an end, and he had no authority to further act in the case, certainly none to agree to the consent decree mentioned.   This answer also makes the point that the orders passed by Judge HILLYER terminated the case and adjudicated it in favor of Cates and wife; that consequently the administrator, J. H. Turner, had no title; that Paul Turner, claiming under him, has none, and besides, was not an innocent purchaser, as he had bought with a full knowledge of all the facts. The answer further alleges, in effect, that the decree of September, 1885, is void because the record nowhere accounts for the disappearance of Watterson from the case as complainant, nor shows the death of Allen W. Turner, nor how J. H. Turner, administrator, in whose favor the alleged decree was rendered, became a party to the case.   And further, that the title to the land is in Mrs. Cates, Mrs. Hollingsworth and the heirs of Ellsberry Cook, under the deeds above referred to, and that Cates and wife have held possession of the whole tract for themselves and as agents of these other parties at the request of the latter, who have never been parties to any litigation over this land.

Mrs. Cates filed an answer substantially the same, in effect, as that of her husband. Similar answers were also filed by Mrs. Hollingsworth and the heirs of Ellsberry Cook, in which they all pray to be made parties to the case; and though no order appears in the record making them such parties as prayed, they were so treated

v 90-47

and regarded by the court and counsel on both sides at the trial and in the subsequent proceedings. These answers allege title in Mrs. Hollingsworth and the heirs of Ellsberry Cook to such portions of the tract as were conveyed to them, respectively, under the deeds from J. S. Cook already mentioned. They also adopt the allegations, and join in the prayers contained in the answer of Cates, and in effect seek an adjudication by the court that the plaintiff, Paul Turner, has no right or title to any portion of the 75 acres involved in this case. The evidence is conflicting as to whether or not Dorsey, counsel for Cates and wife, after the passage of the orders by Judge HILLYER, had express authority to treat the case as still pending, and to agree to the consent decree of September, 1885. This issue was submitted by the presiding judge to the jury, who evidently determined it in favor of Cates and wife.

HALL & HAMMOND and W. L. WATTERSON, for plaintiff.
J. L. DOYAL and HUTCHESON & KEY, for defendants.

LUMPKIN, Justice (after stating the facts as above):

1. Under section 247, par. 5, of the code (Acts of 1869, p. 136), judges of the superior court have authority to hear and determine in vacation demurrers to bills in equity—now called equitable petitions. It was, however, in the case of *Murphy* v. *Tallulah Steam, &c. Co.*, 72 *Ga.* 196, held that a bill in equity could not be dismissed on demurrer prior to the term to which the bill was returnable, and that the act of 1869 above referred to contemplated a " vacation " subsequent to the return term of the bill. Applying this construction of section 247 of the code to the facts of the case now before us for determination, it follows that the order of Judge HILLYER sustaining the demurrer to the bill filed by Watterson, Carnes and Turner against Cates and wife, passed before the appearance term of that bill, was without authority of law, and did not, of itself, take the

case out of court. It will have been seen, however, that at the next regular term another order was passed, reciting that this bill had been dismissed on demurrer, and rendering judgment for costs against the complainants. Most probably this latter order referred to that which had been passed in vacation. Still, this is not entirely certain, for not only does the second order fail in terms to refer to the one previously passed, but its language also admits of the construction that it was designed, without regard to any previous order, to itself operate as then and there dismissing the action. Be this as it may, however, this term order declares that the bill has been dismissed on demurrer, and the presumption of law is that this statement is true and correct, and consequently, that such dismissal was legal and proper. If the order passed in term was intended to ratify and adopt the order previously passed in vacation, which was inoperative because unauthorized by law, we see no reason why the dismissal of the bill could not in this way be accomplished as effectually as in any other. See *Rasberry* v. *Harville*, 90 *Ga.* 530. On the other hand, if the order in term was intended to operate as then dismissing the bill, there could be no question of its validity. It was, however, contended by the distinguished counsel for the plaintiff in error, that this order did not operate as a judgment finally disposing of the case, but was merely a judgment for costs. The reply to this contention is obvious. Ordinarily a court would not, and could not, render judgment against a plaintiff for costs, except upon the idea that the case was finally determined, and determined adversely to the plaintiff; and though in equity cases it is the province of the judge to decide upon whom the costs shall fall, this determination could not be properly arrived at, and is never in fact made, as to the ordinary costs due the officers of court, until the case is at an end.

Treating this order, therefore, as a valid judgment finally disposing of the bill, it was binding on all the parties to the case, and could not be collaterally or indirectly attacked or set aside. In order to vacate such judgment, a direct proceeding, instituted within three years from the rendition thereof, would be necessary. After the lapse of three years, such proceeding would be barred by the statute of limitations. As throwing some light upon the subject of indirectly attacking final judgments by proceedings subsequent thereto, reference is made to the following authorities, which are, more or less, in point. Black on Judgments, §304; Warren *v.* McCarthy *et al.*, 25 Ill. 95; Mulvey *v.* Carpenter *et al.*, 78 *Ibid.* 580; Gavin *v.* Comm'rs, &c., 104 Ind. 201; Johnson *v.* Anderson *et al.*, 76 Va. 766; Nuckolls *v.* Irwin, 2 Neb. 60.

It is doubtless true that the judgment rendered by Judge Hillyer might, with the consent of the defendants, have been ignored and another substituted in its stead; but such consent should be plainly and unequivocally proved, and if given by counsel for the defendants, he must be shown to have acted under express authority from them. The rendition of the judgment terminated the cause, and the ordinary powers and authority of counsel for the defendants then ceased, and his connection with the case was thereupon entirely at an end. As to the powers and authority of attorneys generally, see Weeks on Attys. (2d ed.), chap. X, beginning with section 215, wherein the subject is fully discussed. Special attention is directed to §§238–9, 242, 249, and 249a, and cases cited. It is true that in the present case counsel on both sides, after the passage of the term order dismissing the bill, treated the case as still pending, and the issue docket shows it was continued several times before the consent decree was rendered at the September term, 1885. We are confident, however,

both upon principle and in view of the authorities above referred to, that after a judgment has remained upon the minutes unreversed for more than three years, it should be considered as binding and conclusive unless legally set aside, or, in a case like the present, shown to have been totally ignored and disregarded by the party in whose favor it was rendered, and another and different judgment, by express consent of such party, substituted in its stead. To show that a substantial victory was, by consent of the prevailing party, changed into a substantial defeat, the mere consent of counsel, who may have acted in total ignorance of the existing judgment, or have regarded it wanting in validity and therefore not binding, will be insufficient unless supplemented by proof of express authority from the client to represent him in such subsequent proceedings.

Whether or not Judge Dorsey had such express authority from his clients was one of the issues in the present case. The trial court plainly and fairly submitted this issue to the jury, who manifestly determined it in favor of Cates and wife. Their finding upon this question was amply sustained by the testimony, and no reason to set it aside appears in the record. No reflection, of course, is intended upon the upright, honorable and distinguished gentleman who was the attorney for the Cateses in the litigation mentioned. An examination of the record will show beyond doubt that he acted in the utmost good faith, and doubtless was influenced by the opinion that the judgment of dismissal we have held to be valid was not binding nor conclusive in favor of those he represented.

The effect of this judgment upon the rights of the Cateses in the present litigation will be briefly considered in the next division of this opinion. Before so doing, however, we will remark that this judgment is of no effect, one way or the other, upon the rights of Mrs.

Hollingsworth and the heirs of Ellsberry Cook. They not having been parties to the case in which this judgment was rendered, it adjudicates nothing either in their favor or against them, and they are neither bound nor protected by the same.

2. The bill filed by Watterson, Carnes and Turner having been dismissed upon a demurrer bringing in question the real merits of that case, the effect of such dismissal was to adjudicate that controversy in favor of Cates and wife; and consequently, at the time Paul Turner's petition was filed, it was *res adjudicata* that the complainants in the former bill had no right to recover this land from the Cateses upon the strength of the alleged sale by the sheriff, and the deed made by him to complainants in pursuance thereof. See *Kimbro & Morgan* v. *Virginia, &c. Ry. Co.*, 56 *Ga.* 185, and *Greenfield & Brown* v. *Vason*, 74 *Ga.* 126. If Paul Turner, the present plaintiff, has any right as against the Cateses to recover this land, it must depend upon the validity and effectiveness of that sale; and it having been adjudicated against his predecessors in title that they could not recover from the Cateses upon that title, and his legal position being no better than theirs, this adjudication necessarily operates as a complete bar to his recovery in the present case, so far as Cates and wife are concerned. The jury having determined in their favor that Judge Dorsey was not authorized by them to agree to the consent decree of September, 1885, it follows, in view of the law just stated, that the verdict in this case, so far as it finds against Turner in favor of Cates and wife, ought not to be set aside; and the refusal of the judge to grant a new trial is to this extent affirmed. Of course, the rights of Mrs. Hollingsworth and the heirs of Ellsberry Cook depend upon other and different questions, which will now be discussed.

3. In the first place, we think it proper to deal with

them as parties to this case. They voluntarily came into court and filed answers in which they asked to be made parties; and though no formal order making them such appears in the record, it is quite clear they were so treated and regarded by the court and counsel on both sides, at the trial and in all subsequent proceedings. Moreover, their counsel distinctly requested the court to recognize them as proper parties to the case, and the court evidently did so. In their answers they adopt the allegations and join in the prayers of the answer filed by Green B. Cates, and by way of cross-bill they manifestly seek an adjudication by the court to the effect that Paul Turner has no right or title to any part of the land involved in this controversy. They also set up title in themselves to those portions of the land claimed by them, respectively, under the deeds from J. S. Cook mentioned in the statement of facts which prefaces this opinion. If the judgment rendered in this case were to remain unreversed, there can be no doubt, we think, under the pleadings, that these parties, Mrs. Hollingsworth and the heirs of Ellsberry Cook, could successfully plead the same in bar of any action which might hereafter be brought by Paul Turner to recover from them those portions of the land in dispute claimed by them and covered by the Cook deeds. They are therefore, practically and to all fair intents and purposes, parties now before the court; and so regarding them, it becomes our duty to pass upon the judgment under review in so far as it relates to them.

It was conceded by all parties that the entire tract of land in controversy in 1876 belonged to J. S. Cook, and every contestant before the court traces title back to this common source. In some way, not shown by the record, Mr. Cook lost the possession of this land, and in the year last mentioned, brought a bill to recover it from one R. S. Cates. The allegations of that bill are

not fully set forth, but it does appear that the trial of it resulted in a decree in favor of Cook, the decree, however, fixing as liens and special charges upon the land certain counsel fees therein set forth. It must be presumed in favor of this decree that these liens were properly and legally authorized by the pleadings in that case, nothing to the contrary appearing. After the case had been begun, Cook, by deed of gift, conveyed to the heirs of Ellsberry Cook the portion of the land which they now claim, and consequently the *lis pendens* was notice to them that the property was involved in litigation. Accordingly, they took under the deed subject to whatever judgment might legitimately be rendered in the pending case. The deed from Cook which conveyed a part of the land to Mrs. Hollingsworth was made after the rendition of the decree in the case last mentioned, and Mrs. Hollingsworth's rights under that deed were, of course, subject to that decree. It is therefore apparent that all the parties with whom we are now dealing received titles to their portions of the land subject to the liens for attorney's fees already mentioned, and no reason appears why a sale by the sheriff under the *fi. fas.* issued to enforce these liens should not divest the titles held by these parties, and the only remaining question is, whether or not such sale was duly and lawfully made by the sheriff.

4. Watterson's testimony, if true, establishes the fact that a sale was had by the sheriff and a deed made by him. This witness does not remember, and was unable to swear, who were the subscribing witnesses to the sheriff's deed, and the court, in effect, held that this being true, the existence and due execution of the deed could be proved only by the maker himself. Under section 3837 of the code, and in view of the decision of this court in *Felton et al.* v. *Pitman et al.*, 14 *Ga.* 530, we hold that this ruling of the court was erroneous, and that under the circumstances, the proof mentioned could

be legally made by any witness who knew the facts. It was also contended that a sale by the sheriff duly made, and the purchase money paid, would pass the title without any deed at all. It seems that the presiding judge was of the opinion that a deed would be necessary. Inasmuch, however, as the plaintiff alleged that a deed in pursuance of the sheriff's sale was actually made, and planted his right to recover upon this fact, we think there was no error in requiring him to prove it, although, as already stated, we do not entirely agree with the learned judge as to the manner in which such proof might be made. Because of the error committed by the court in charging that the existence and execution of the deed could be proved only by the maker of it when the subscribing witnesses were not produced, we think a new trial should be had as between the plaintiff, on one side, and Mrs. Hollingsworth and the heirs of Ellsberry Cook on the other. Such new trial, however, is not to affect the rights of Cates and wife as to the portion of the land held by Mrs. Cates under the deed from J. S. Cook, because, as already shown, Mrs. Cates's title to this land is, as to Paul Turner, *res adjudicata*. The foregoing disposes of all the questions involved in this case which will be material upon a new trial, all questions affecting only Cates and wife being, by our judgment, eliminated from the controversy.

5. The cross-bill of exceptions assigns as error the refusal of the judge to dismiss the motion for a new trial upon the facts summarized in the 5th head-note. We do not think the judge erred in declining to dismiss the motion. The original order conferred upon him the power to appoint a time in vacation for the hearing, upon giving five days' notice to the parties. If, in the exercise of this power and the discretion necessarily given him thereby, he had chosen to fix a day certain and strictly require the movant to present his motion on that day, and upon his failure to do so had dismissed

the motion, we would not say the judge abused his discretion. But having fixed a day, and the parties then having consented to a postponement of the hearing, the matter was thus given some flexibility; and upon failure to hear the motion on the day agreed upon, it was certainly within the power of the judge to appoint such subsequent date for the hearing as would suit his convenience. In fixing a day for the hearing, counsel had no controlling voice, this power being vested solely and absolutely in the judge under the order originally passed, and the only right thereunder to which counsel could lay claim was to the five days' notice specified therein. This being true, failure to hear the motion on the day first assigned, or on the subsequent day agreed on between counsel, could merely have the effect of leaving the matter as it stood previous to the order fixing the day first appointed, and certainly could not operate to divest the court of authority to exercise the right which rested solely with him, of assigning the day upon which the motion should be heard. If any good and sufficient reason existed why the motion could not be disposed of on the day first appointed, it was not only the right, *but the positive duty*, of the judge to appoint a future day for the hearing; and if from unforeseen causes the day last designated proved an inconvenient time for the hearing, it was within the discretion of the judge to fix still another day, and so on until the matter could be finally disposed of. The hearing having gone over to the next regular term, the judge had a right to treat that time as one appointed by himself; and no complaint being made that either party did not have proper and sufficient notice, this court can in no view of the matter say that the judge abused his discretion in then entertaining and disposing of the motion.

*Judgment on main bill of exceptions affirmed in part and reversed in part. Judgment on cross-bill of exceptions affirmed.*