## Owens *v.* Atkins.

### Opinion delivered March 3, 1924.

1. Municipal corporations—permanent obstruction of street.—Where a permanent obstruction of a street becomes a public nuisance so as to inconvenience the public, the municipality or any individual especially injured thereby may abate and restrain same by injunction.

2. Municipal corporations—temporary obstruction of street.—A city or town council may, by a temporary inclosure or obstruction of the streets, divert public travel when same becomes necessary to meet some exigency or some laudable purpose that conserves the public or private welfare.

3. Municipal corporations—trespass.—Where a town council granted to a school board a temporary right to possession of two streets while a game of baseball was played by school children, and so much of the street as was sufficient to permit the playing of the game was fenced off during the game, one who persisted in intruding within the inclosure and interfering with the game was guilty of a violation of Crawford & Moses' Dig., § 2546.

Appeal from Pope Circuit Court; *J. T. Bullock,* Judge; affirmed.

*Robert Bailey* and *Edward Gordon,* for appellants.

The town council could not, by ordinance or other-wise, permit the closing of the public streets or the use of them for any purpose other than that for which they were dedicated. 50 Ark. 472, 473; 19 Wend. 659; 22 Ia. 351; 7 Ohio 354; 2 Dillon of Municipal Corporations, 3d ed., §§ 650, 651, and authorities cited; 42 Ark. 102; 40 Ark. 83; 77 Ark. 227; *Id.* 576; 89 Ark. 177; 111 Ark. 549; 135 Ark. 437; 112 Ark. 207; 147 Ark. 292.

*E. A. Williams,* for appellee.

1. Every necessary fact that goes into making a case of purpresture is lacking in this case. Counsel have fallen into error and failed to distinguish between pur-presture and temporary closure, the right of cities and towns to erect temporary barriers. 13 R. C. L. 224; 42 L. R. A. (N. S.) 480; 19 R. C. L. 783.

2. The conduct of the defendants was such as to constitute a trespass, and punishable at the common law, even though we have no statute on the subject. 1 Clark & Marshall's Law of Crime, 45.

WOOD, J. The school building and grounds in the town of Atkins occupy one block, on the east side of which is located the school building and a small playground, and on the west side there is located what is known as a park or baseball ground, on the northeast portion of which is a grandstand. In order to afford sufficient space for the playing of baseball on the school grounds, it became necessary to use the street running east and west along the south side and also the street run-ning north and south along the west side of the school property. It was also necessary that certain private property be used as a part of the ball ground. The town council of Atkins granted to the school board of the school district the right to close up the streets mentioned during the game, which lasted one and a half hours two days in the week. The school board leased the private property, and on the east side, south of the school building, they placed a fence in panels and wagon sheets, closing the street on the east and join-

ing with the property leased of Mrs. Campbell on the south. On the north from the school building another panel fence connected with the grandstand and the fence across the street. The fence was so constructed that it could be taken down immediately after each game, and stacked away. On the west and southwest there were ropes stretched across the streets so as to completely inclose this space used as a ball park. No one could enter this park, thus inclosed, without either crawling under the ropes and sheets, or going around the end of same on to the private property, over which the school board had control.

One day, when a game of baseball was in progress, Bleve Scott came into the park, without paying, and, instead of going to the grandstand, he took his stand in the street running east and west on the south. In this position he interfered with the game, and, upon his refusal to pay and take his seat in the grandstand, or go outside of the park, he was arrested and fined by the mayor, sitting as a justice of the peace, for the offense of trespass. A short time thereafter he returned, in company with E. Owens. They went in on the west side and took their stand on the sidewalk, where those who paid their admission fee were not allowed to remain, and where they would interrupt the game. Upon their refusal to pay or move out of the way, at the request of the marshal of the town, acting under the auspices of the school board, warrants were issued charging them with trespass, and they were arrested and tried before a jury in the mayor's court, sitting as a justice of the peace, and fined in the sum of $10.

There was testimony on behalf of the town tending to prove that the presence of Scott and Owens at the places indicated had a tendency to disturb the crowd and to interfere with the game of ball. The marshal requested them, two or three times, to move, and offered to loan them the fifty cents charged for entering the grounds, and even to give them the fifty cents if they would move and take their places in compliance with the rules of the

school board. There was testimony to the effect that the streets temporarily inclosed were not main business streets of the town, but residence streets; that no main thoroughfare leading out of the town was closed up at all. Owens and Scott were there to take in the ball game. One of them said that he did not have any money to pay the entrance fee that day. The other one had the money, and refused to pay. They both asserted that they had a right to use the street in the manner in which they were using same, and to stand there to watch the game.

They appealed to the circuit court, where the cases were consolidated for trial, and were submitted to a jury. The court instructed the jury, in effect, that the punishment for trespass was a fine of not more than $100, and that the only issue for the jury to determine was as to the amount of the fine; that the defendants, under their own statement, were guilty of trespass. The defendants asked the court to instruct the jury that the defendants had a perfect right to be on the streets of Atkins, and that, while on the streets, they were not guilty of trespass, and that the town had no right to close the streets except for public safety or public health. The court refused these prayers, to all of which rulings of the court the defendants objected and duly excepted. The jury returned a verdict of guilty, and assessed the fines against each of the defendants in the sum of $10. From the judgments entered against them in that sum they bring this appeal.

Learned counsel for appellants contend that the inclosing of the streets in the manner shown by the undisputed testimony was no more nor less than a purpresture on the part of the school board, or those controlling the baseball team in Atkins, as the town council could not, by ordinance or otherwise, permit the closing of public streets or the use of them for any other purpose than that for which they were dedicated. To sustain this contention, counsel rely upon the doctrine of our cases to the effect that, where land is dedicated by the owner to public use as a thoroughfare—a highway or street—the

authorities of a city or town in which it is situated cannot lawfully appropriate it to any other purpose, and that an inclosure thereof or encroachment thereon which obstructs or interferes with the use of same for the purposes for which it was dedicated, constitutes a purpresture, and may become a public nuisance, which the public, or any individual who has sustained a peculiar and special injury thereby not shared in common with the public, may abate by injunction, citing *Packet Co.* v. *Sorrels,* 50 Ark 456; *Taylor* v. *Armstrong,* 24 Ark. 102; *Matthews* v. *Bloodworth,* 111 Ark. 545, and other cases.

But the doctrine of these cases has no application to the facts of this record, for the reason that, in all of those cases, there was an obstruction to the thoroughfare of a permanent character, and not a mere temporary barrier and interference with the use of the thoroughfare for its dedicated purpose. In *Ruffner* v. *Phelps,* 65 Ark. 410, we said:

"A purpresture is an encroachment upon the street which the municipality may or may not tolerate, at its option, if same be not also a public nuisance; but, if said encroachment be such as to inconvenience the public, the municipality, or any individual especially injured thereby, may abate and restrain same by injunction."

A failure to distinguish between the permanent and temporary character of the inclosure and obstruction of the streets has led appellants and their counsel into the error of assuming that the grant by the town council to the school board of permission for the latter to inclose the streets in the manner indicated conferred no rights upon the school board which the appellants were bound to respect. It is well established by the authorities that any city or town council may, by a temporary inclosure or obstruction of the streets, divert public travel when same becomes necessary to meet some exigency or some laudable purpose that conserves the public or private welfare. As is said in 19 Ruling Case Law, 183:

"A municipal corporation may permit a temporary use of a public way for private purposes, especially if it

is incidental to or connected with the use or way for travel, *or is essential to the reasonable use of the adjoining property.*"

See also 13 Ruling Case Law, Highways, § 189. In *Lawrenceburg* v. *Alice May*, 149 Ky. 490, 42 L. R. A. (N. S.) 480, 483, quoting from *Simon* v. *Atlanta*, 67 Ga. 618, 44 Am. Rep. 739, it is said:

"It is, however, a safe and reasonable rule to declare that, so long as the alleged obstruction is temporary and reasonable in character and is intended for public safety and convenience, it is no cause of complaint."

Now, the undisputed testimony shows that the town council and the school board joined in the commendable effort to furnish the youth of Atkins the wholesome sport so essential to their physical development, and also to afford them and the people of the town an innocent diversion which added greatly to their pleasure and entertainment, by providing a park where the great American game of baseball could be played. This, under the circumstances, was a use, temporary and reasonable in character, which tended to promote the welfare of the town, and which the town council was fully justified in recognizing. Its grant to the school board gave such board a temporary right to the possession of the streets named for the purpose mentioned, which appellants had no right to interfere with. The recalcitrant and obstinate manner in which appellants ignored the rights of the school board and the public interested in the maintenance of the ball park, on the school grounds, constituted a trespass which, as the proof shows, was well calculated to cause a breach of the public peace and order. Under the common law this was a public offense, and it is made so under our statutes. 1 Clark and Marshall's Law of Crimes, p. 45, § 17; Crawford & Moses' Digest, § 2546.

The trial court correctly so declared the law, and defined the punishment that could be imposed on appellants. The verdict of the jury shows that they were lenient in not assessing a greater fine than ten dollars for the offense committed by the appellants. The judgments are correct in all things, and therefore are affirmed.