1. By an amendment to the constitution, proposed and ratified in 1939, it was declared that the judges of the superior court "may, on reasonable notice to the parties, at any time, in vacation, at chambers, hear and determine, by interlocutory or final judgment, any matter or issue, where a jury verdict is not required, or may be waived." Ga. L. 1939, pp. 78-79. Under the foregoing law as applied to the particular facts, it does not appear that the judgment overruling the demurrer, to which exceptions were taken, and a previous judgment purporting to set aside a still earlier judgment, which also overruled the demurrer, were void as having been rendered in vacation without authority; and consequently there is no merit in the motion to dismiss the writ of error on the ground that the first judgment, being valid and not having been excepted to, stands as the law of the case, rendering the exceptions to the last judgment moot or ineffectual.
2. In order for a solicitor-general to proceed for the public, on information filed with him by citizens, to enjoin a nuisance under the Code, § 72-202, that which he asks to have enjoined must be a public nuisance.
(a) A "purpresture" as defined at common law, and recognized in this and other States, is "when one encroacheth, and makes that serviceable to himself which belongs to many."
(b) Any encroachment upon a public street or highway is a purpresture; and if the public use is impeded or rendered less commodious, such encroachment is generally not only a purpresture, but also technically a public nuisance, regardless of the degree of interference with the common enjoyment.
(c) It is not true, however, that every purpresture is a public nuisance; and whether it is such a nuisance or not will be determined according to the particular facts. Unless the public sustain or may sustain some degree of inconvenience or annoyance in the use of a public highway or street or other public property, there is no public nuisance.
(d) In this suit instituted by a solicitor-general, on information, to enjoin the defendant from constructing a pipe-line for transportation of gasoline, under and across designated public highways, the allegations *Page 818 
that such "appropriations" of said highways to private use will constitute a purpresture and a public nuisance, while showing a purpresture, were insufficient to show a public nuisance, in the absence of further averments indicating interference or annoyance to the public in the common use of such highways.
(e) The solicitor-general not being authorized to act on the information of citizens except in case of a public nuisance, and such not being shown, the action should have been dismissed on general demurrer.
3. Regardless of the defect in the petition, the undisputed evidence, consisting of an agreed statement, showed that the proposed pipes for the passage of petroleum and petroleum products would be inserted through and across the area occupied by the highway, merely by boring horizontally four feet beneath the surface, "without disturbing the surface itself," that the products to be transported would be enclosed not only by a pipe but an iron casing, and that this is "the usual and standard method . . approved . . by State highway boards and similar bodies." Under this evidence, a finding was demanded as a matter of law that the alleged "purpresture" would not and could not interfere with the public use and is not a public nuisance. The verdict in favor of the plaintiff was contrary to the evidence, and should have been set aside on the defendant's motion for a new trial.
 Nos. 13797, 13843. SEPTEMBER 15, 1941. REHEARING DENIED SEPTEMBER 26, 1941.
In case No. 13,797 the facts are as follows: On April 23, 1940, Charles H. Garrett as solicitor-general of the Macon Judicial Circuit, on the relation of a number of individuals, and in the name and behalf of the State of Georgia, filed a suit for injunction against Southeastern Pipe-Line Company and another person, in the superior court of Peach County, which is one of the counties of the Macon Circuit. By an amendment the pipe-line company was made the sole defendant. The petition as amended alleged substantially the following:
The defendant is a foreign corporation, having an office and agent in Peach County. The defendant is laying or constructing a pipe-line for the transportation of gasoline from Port Saint Joe, Florida, to a point at or near Chattanooga, Tennessee, through the State of Georgia. The construction of such pipe-line involves the crossing and occupation of parts of the Georgia State Highway System with said pipe-line at various points, and the permanent maintenance of such pipe-line, as hereinafter shown.
The defendant has not been authorized by the State of Georgia, *Page 819 
or by any one having authority in the matter, to lay its line upon, across, or under the highways of the State of Georgia or any part of the State-aid system. Said defendant has already laid its line under, across, and upon certain of said highways in the southern portion of the State, and is rapidly going forward to lay them under all of the other highways in the various counties of the State along the route aforesaid, and unless restrained and enjoined will proceed to do so in the next few days.
The State highways belonging to the State-aid highway system, through, under, and across which the defendant has laid or proposes to lay its pipe-line, consist of thirty roads, the identification numbers of which, together with the particular locations of the crossings or proposed crossings in a number of counties and judicial circuits, are stated in detail in the petition, including State roads 7 and 96 in Peach County and State Roads 19 and 22 in Bibb County, in the Macon Circuit.
The petition further alleged: The State is in possession of said highways, and not only claims them under the provisions of the Code, § 91-104, but also holds fee-simple title to the land on which said highways are located at all the points at which said defendant has crossed or is about to cross the same with said pipe-line, by virtue of conveyances from the landowners on each side of the highways at the points of said crossings.
The appropriations of said highways to the private use of said company will constitute a purpresture and an appropriation to private usage of that which belongeth to the State and to the public, and will constitute in law a public nuisance.
Equity has jurisdiction in this case, not only because of its ancient and inherent jurisdiction to prevent the creation and maintenance of purprestures, public nuisances, and encroachments upon the public right, and the State's domain and property, but also for the prevention of a multiplicity of suits, since each act of crossing, and each day's maintenance of said pipe-line, would constitute a wrong of a continuous nature, each of them giving a separate cause of action. The private use to which the Southeastern Pipe-Line Company proposes to devote said pipe-line is the keeping and transportation therein of gasoline, which is a dangerous substance, likely to explode and cause damage.
The petitioner prayed for injunction to restrain the defendant, *Page 820 
its agents and servants, from entering upon and laying any pipe on, under, or across any highway in the State of Georgia, and especially said highways in so far as they are in said County of Peach or in the Macon Judicial Circuit, or from operating or keeping any pipe-line thereon or thereunder for the carriage of gasoline or petroleum products; and that the court grant such other and further relief, writs, and remedies as shall be legal, equitable, just, or proper in the premises.
The defendant filed a demurrer on general and special grounds; also an answer. The grounds of general demurrer were substantially as follows: (1) The petition does not disclose the existence of an encroachment, and the construction and maintenance of the pipe-line, as described in the petition, under and across the highways would not constitute a purpresture. (2) No facts were alleged which would constitute a nuisance. (3) The solicitor-general of the Macon Circuit was without authority to bring an action of the nature indicated, for under no circumstances could the solicitor-general enjoin the defendant or otherwise proceed to abate a nuisance which occurred without the judicial circuit for which such solicitor-general was serving. (4) Equity will not enjoin a prospective or contingent nuisance.
The grounds of special demurrer were substantially: (1) The solicitor-general of the circuit was without authority to claim title for the State, by way of adverse possession or otherwise, to any land; and this is especially true with regard to land located without his judicial circuit. (2) The allegations by which the State claimed fee-simple title to the highways, (a) because of the form of the conveyance shown by exhibit attached to the petition, and (b) because of adverse possession, constitute mere conclusions of the pleader, which are entirely unsupported by the allegations of fact.
At interlocutory hearing the demurrer was urged, and evidence was introduced by both parties. After considering the case for some time, the judge, on February 26, 1941, overruled the demurrer on all grounds, general and special, and granted an interlocutory injunction. On a motion of the defendant for reconsideration, presented to the judge at chambers on March 7, these orders were vacated on that date; but after further consideration, orders to the same effect were again rendered, to wit: on April 1. To the orders rendered on the last-mentioned date the defendant excepted. *Page 821 
The defendant in error filed a motion to dismiss the writ of error, presenting therein the following contentions: (1) Since the order granting an interlocutory injunction was intended to remain of force only until the trial of the case before the jury, and since the case was tried on May 5, 1941, when a verdict and final decree were rendered in favor of the plaintiff, the questions raised by the exceptions to the grant of the interlocutory injunction are moot. (2) All of the orders in reference to the demurrers were rendered in vacation, between the January and May terms of the superior court of Peach County; and it is insisted that while the original order overruling the demurrer in connection with the interlocutory hearing was valid, both the subsequent orders were void for the reason that the judge had no jurisdiction or authority in vacation to render them, and therefore that the original judgment, to which no exception was taken, must necessarily stand as the law of the case, rendering the exceptions to the last order moot or ineffectual.
In case No. 13,843 the record shows the following: On May 5, 1941, after issuance of the writ of error to review the judgment overruling general and special demurrers to the petition, as stated above, and during the pendency of such writ of error, the case proceeded to trial before a jury on the issue as to whether a permanent injunction should be granted. There was an agreed statement of facts, on which the court directed a verdict for the plaintiff. A motion for new trial, based on the general grounds and on the direction of the verdict, was overruled. To this judgment the defendant excepted. The statement of facts set forth correspondence with the State Highway Board as to the laying of the pipes; the form of conveyances to the State Highway Board from landowners at locations where the pipe-line would cross State highways; and tariffs published and filed by the Pipe-Line Company with the Interstate Commerce Commission, under which, as contended by the defendant, gasoline would be transported for any shipper. It was further agreed and stipulated: "The method of construction being employed by defendants at the time the injunction was granted, and which they continued to employ in crossing paved highways, was that a boring was made through the soil four feet below the surface of the pavement, without disturbing the surface itself. After the hole was bored, an iron casing was inserted, and into this casing the pipe for the carrying of gasoline or other petroleum *Page 822 
products would be inserted. This is the usual and standard method employed by this company in laying such pipe-lines, and is approved as such by State highway boards and similar bodies in several States." After acquirement by the State of its conveyances from landowners, the defendants have obtained from owners of lands in question written contracts for the "easement of laying and maintaining said pipe lines."
During the pendency of both the foregoing writs of error, counsel for plaintiffs in error by supplemental brief have called attention to a proclamation by the President, made on May 27, 1941, declaring an "unlimited national emergency;" an act of Congress, approved July 30, 1941, vesting in the President power to proclaim any pipe-line for the distribution of petroleum or petroleum products in interstate commerce as "necessary for national defense purposes," and containing provisions as to the power of eminent domain by those proposing to operate such lines; and a proclamation by the President, made on September 3, 1941, declaring that the proposed pipe-line involved in this case is "necessary for national defense purposes," and that the defendant company should have the right of eminent domain pursuant to said act of Congress.
In a reply brief the defendant in error contends, among other things, that these proclamations and the act of Congress, having occurred since the judgments under review were rendered, are irrelevant and can not be considered in passing upon these cases, and that the act would be unconstitutional in so far as it might purport to authorize condemnation of property belonging to the State.
The first and second divisions of this opinion will deal solely with case No. 13,797.
1. The defendant in error moved to dismiss the writ of error, for reasons indicated in the preceding statement. Counsel for the plaintiffs in error concede that the motion to dismiss is well taken, so far as it relates to the exceptions to the order granting an interlocutory injunction; it appearing that the case has since proceeded to trial, and that a verdict and a decree in favor of the plaintiff were rendered. Accordingly, no further reference need be made to *Page 823 
these exceptions. Unity Cotton Mills v. Dunson, 131 Ga. 258
(2) (62 S.E. 179); Holtman v. Knowles, 141 Ga. 613 (3) (81 S.E. 852).
The other questions raised by the motion to dismiss require consideration of a constitutional amendment proposed by the General Assembly by an act or resolution of March 24, 1939, and ratified in June of the same year. Ga. L. 1939, pp. 78-79. The contention of movant is that since the order of February 26, 1941, overruling the demurrer to the petition, was passed in connection with the interlocutory hearing, it was a valid judgment under the act of 1925 (Ga. L. 1925, p. 97, Code, § 81-1002), but that the subsequent orders were void as having been rendered in vacation without authority, and therefore the first order, to which no exceptions were taken, stands as the law of the case, and as such is controlling, notwithstanding the exceptions to the order of April 1, by which the judge again overruled the demurrer, after setting aside his first order on a motion for reconsideration. It is thus insisted that these exceptions present only a moot question, since in no event could they be given effect, in view of what is claimed to be the law of the case.
By the amendment of 1939 it was declared that the judges of the superior court "may, on reasonable notice to the parties, at any time, in vacation, at chambers, hear and determine, by interlocutory or final judgment, any matter or issue, where a jury verdict is not required, or may be waived." Whether the motion to dismiss might have been good under the law as it existed before the adoption of this amendment, we think the amendment enlarged to some extent the jurisdiction of the judges of the superior court as to the hearing and determination of matters in vacation. It is apparently addressed to the courts, and not the General Assembly; and while it does not define reasonable notice or declare how it should be given, the requirement as to notice relates to due process and could be made solely a judicial matter. Simpson v. Bradley, 189 Ga. 316,319 (5 S.E.2d 893); Piggly-Wiggly Georgia Co. v. MayInvesting Corporation, 189 Ga. 478 (3) (6 S.E.2d 579);Hutcheson Manufacturing Co. v. Chandler, 29 Ga. App. 726,730 (116 S.E. 849). It is our opinion that under the terms of this amendment the judge is empowered at least, for sufficient cause and on proper pleading, to vacate and set aside any order or judgment *Page 824 
which he was theretofore authorized by law to render in vacation and which he did actually render during the same vacation period, and that to this extent it is self-executing (Smith v.Joiner, 27 Ga. 65; Arnett v. Board of Commissioners,75 Ga. 782 (1 a); 11 Am. Jur. 688-690; 16 C. J. S. 98-121); also that in such case the judge will act as a court of general jurisdiction where previously his authority or jurisdiction may have been limited or conditional. Compare Code, §§ 24-2618, 24-2619, 24-2622. A necessary corollary is, that any judgment authorized by the amendment may be attended by a presumption of regularity, which could not be indulged where the jurisdiction is special or limited. Jones v. Smith, 120 Ga. 642
(48 S.E. 134); Gray v. McNeal, 12 Ga. 424; 21 C. J. S. 149-153, § 96.
The matter here did not require a jury trial, but involved questions of law raised by a demurrer. Under the Code, § 81-1002 (Ga. L. 1925, p. 97), the judge was authorized to pass on the demurrer at the interlocutory hearing. He exercised this authority, overruling the demurrer on February 26, 1941, after taking the case under advisement. Central Railroad BankingCo. v. Farley, 89 Ga. 180 (15 S.E. 34); Andrews v.State, 21 Ga. App. 498 (94 S.E. 583); Blakely HardwoodLumber Co. v. Reynolds Lumber Co., 173 Ga. 602 (2) (160 S.E. 775). On March 7, on motion of the defendant, the order was set aside and vacated. This motion being in writing, there was not an absence of pleading. On April 1, a third order was passed, which again overruled the demurrer. All of these orders were passed in vacation, between the January and May terms of the superior court of Peach County. They were thus passed after the first or appearance term (Turner v. Cates, 90 Ga. 731, 738
(16 S.E. 971); Foster v. Foster, 178 Ga. 791
(174 S.E. 532)); and following their rendition there was no adjournment of a term, such as might have complicated the situation.McCandless v. Conley, 115 Ga. 48 (41 S.E. 256); Crowell
v. Crowell, 191 Ga. 36 (11 S.E.2d 190). Under the particular and limited facts appearing, we think the amendment of 1939 should be given application. So applying it, we have the following situation:
It is not insisted that the motion of the defendant on which the original order was set aside or vacated was considered or acted upon without reasonable notice to the opposite party, or that the judgment *Page 825 
ultimately rendered was without such notice. The record is silent as to notice, and in the circumstances reasonable and proper notice to the parties, whatever kind may have been required, will be presumed under the principle that any judgment of a court of general jurisdiction will be presumed valid until the contrary appears. Woodbery v. Atlas Realty Co., 148 Ga. 712 (4) (98 S.E. 472); Green v. Spires, 189 Ga. 719 (2), 722 (7 S.E. 246). This presumption prevails in favor of judgments rendered in vacation, as well as those rendered in term, where the matter so dealt with in vacation was one of which the judge had jurisdiction in vacation to the same extent as in term. Pease
v. Wagnon, 93 Ga. 361 (20 S.E. 637); Peavy v. Dure,131 Ga. 104 (2, 3) (62 S.E. 47).
The motion to dismiss amounts to a collateral attack, and should not be sustained unless the judgments assailed therein are void. This does not appear. See, in this connection, Milner v.Neel, 114 Ga. 118 (2, 3), (30 S.E. 890); Hill v. FirstNational Bank of Reynolds, 160 Ga. 883 (129 S.E. 285);Avery v. State, 4 Ga. App. 460 (61 S.E. 839).
We agree that in so far as the amendment of 1939 requires construction it should be studied in the light of its background, including the former law and judicial decisions; and we have so proceeded in reaching the conclusion stated. We have stated that the amendment is so far self-executing as to cover the present situation; but just what further change or changes, in any, it may have made can be properly determined only as the questions arise in future cases. It may or may not have changed the former law as to the existence of terms and the maturity of matters for trial thereby, and what of the rule as to the finality of judgments after adjournment? See East Tenn., Va. Ga. Ry. Co.
v. Greene, 95 Ga. 35 (22 S.E. 36). These and other important questions may in the future require solution. They are not in the present case, however, and we mention them here mainly to exclude them and thus to guard against mistake as to the scope of our present ruling. As bearing generally on construction, see Park
v. Candler, 114 Ga. 466 (40 S.E. 523); Atlantic Coast LineRailroad Co. v. Georgia Sweet Potato Growers Association,171 Ga. 30 (1, 5) (154 S.E. 698); Botts v. SoutheasternPipe-Line Co., 190 Ga. 689, 700 (10 S.E.2d 375); 16 C. J. S. 51-77, §§ 15-36.
Whether the amendment of 1939, which was not invoked or dealt *Page 826 
with in Galloway v. Mitchell County Electric Corporation,190 Ga. 428 (9 S.E.2d 903), and Deen v. Baxley State Bank,192 Ga. 300 (15 S.E.2d 194), would have been applicable in those cases, it could not have affected the result in either of them, but, if applicable, would have fortified the conclusions there reached. See Revels v. Kilgo, 157 Ga. 39
(121 S.E. 209).
2. We consider next the general grounds of the demurrer. The petition alleged, in effect, that by conveyances from the abutting owners the State holds the fee-simple title to the lands at all points where the defendant has crossed or is about to cross the highways with its pipe-line; that the defendant has not been authorized by the State of Georgia, or by any one having authority to act for it, so to use the highways of the State; and that the appropriations of said highways to the private use of said company will constitute a purpresture and a public nuisance.
Irrespective of any question as to the nature of the title or as to permit, we are of the opinion that the petition did not state a case for action by the solicitor-general. In order for a solicitor-general to proceed for the public, on information filed with him by citizens, to enjoin a nuisance under the Code, § 72-202, "the object which it is sought to enjoin must be a public nuisance." State ex rel. Boykin v. Ball Investment Co.,191 Ga. 382 (2), 389 (12 S.E.2d 574).
The petition can not be reasonably construed as showing that any pipe-line has been or will be laid on the top or surface of the highway. Krueger v. MacDougald, 148 Ga. 429
(96 S.E. 867).
The allegations as to the dangerous character of gasoline do not show that the construction and operation of the pipe-line will be a nuisance per se, or will necessarily become a nuisance per accidens. Standard Oil Co. v. Kahn, 165 Ga. 575
(141 S.E. 643); Warren Co. v. Dickson, 185 Ga. 481 (3), 483 (195 S.E. 568). It is also clear that the allegation as to public nuisance is a mere conclusion, based upon the assumption that a purpresture is without more a public nuisance as a matter of law. In fact it is conceded in the brief of the defendant in error that the petition does not allege a nuisance per accidens, and that it is predicated solely upon the theory of a purpresture.
A "purpresture" as defined at common law, and recognized in this and other States, is "when one encroacheth, and makes that *Page 827 
serviceable to himself which belongs to many," as "`when there is a house builded, or an enclosure made of any part of the King's demesne, or of a highway, or a common street, or public water, or such like things,'" or by "`digging a ditch or making a hedge across [a highway] or laying logs of timber in it, or by doing any other act which will render it less commodious to the King's subjects.'" Mayor c. of Columbus v. Jaques, 30 Ga. 506,512, and cit. Thus, any encroachment upon a public street or highway is a purpresture; and if the public use is impeded or rendered less commodious, such encroachment is generally not only a purpresture, but also technically a public nuisance, regardless of the degree of interference with the common enjoyment. While there may be language in some decisions indicating that a purpresture is always a public nuisance, the terms are not synonymous. By the great weight of authority, it is not true that every purpresture is a public nuisance. It may or may not be such, according to the particular facts. Although the two may coexist, either may exist without the other. The rule both in reason and by authority is, that, unless the public sustain or may sustain some degree of inconvenience or annoyance in the use of a public highway or street or other public property, there is no public nuisance. See Attorney-General v. Evart Booming Co.,34 Mich. 462, 472; People v. Vanderbilt, 26 N.Y. 287, 293; People v. Park c. R. Co., 76 Cal. 156 (18 P. 143); Beckerv. Sanitary District of Chicago, 194 Ill. App. 639 (2); Smithv. McDowell, 148 Ill. 51 (35 N.E. 141, 22 L.R.A. 393); Cobbv. Lincoln Park Com., 202 Ill. 427 (67 N.E. 5, 63 L.R.A. 264, and cit., 95 Am. St. R. 258); The Idlewild (C.C.A.), 64 Fed. 603, 605; State v. Marianna, 183 Ark. 927
(39 S.W.2d 301, 303; Leitchfield Mercantile Co. v. Commonwealth, 143 Ky. 162
(136 S.W. 639, 642); Owens v. Atkins, 163 Ark. 82
(259 S.W. 396, 397, 34 A.L.R. 267). See other cases cited in 35 Words Phrases, 557, 20 R. C. L. 386, § 9, and 46 C. J. 719, § 252, which support the texts in distinguishing between a purpresture and a public nuisance. See especially editorial notes in 69 Am. St. R. 271, and 107 Am. St. R. 204.
In Laing v. Americus, 86 Ga. 746 (1, 3) (13 S.E. 107), where it was held that a public nuisance existed, there was an actual private obstruction interfering with the public use of a city street. This was likewise the case in City Council ofAugusta v. Reynolds, *Page 828 122 Ga. 754, 756 (50 S.E. 998, 69 L.R.A. 564, 106 Am. St. R. 147, where the obstructions covered four city blocks. However, in the latter decision it was specifically recognized that "permanent structures which do not interfere with travel and which are erected for public purposes, such as telegraph and telephone poles, and the like, are permissible." (Italics ours.) See also, to like effect that it is not every use by an individual of a street or highway which constitutes a public nuisance: Simon v. Atlanta, 67 Ga. 618, 621, 622
(44 Am. R. 739); Brooks v. Atlanta, 1 Ga. App. 678 (57 S.E. 1081).
In Rider v. Porter, 147 Ga. 760 (95 S.E. 284), it was alleged in the information that the defendant had daily, for several months past, stationed his wagon at a given point on a named public road in the county, placed a peanut roaster and a gasoline engine in the public road, arranged fruits and bottled soft drinks about his wagon on the public road, at which point he exposed for sale and sold his goods "for days at a time" to the public, thus virtually establishing "a place of business in and upon said public road." In that case it was said: "Any permanent structure in a public road which materially interferes with travel therein is a nuisance per se. . . Any obstruction in a public road, permanent in nature or continuously maintained at a particular point on a certain portion of the road, which interferes with the free use of the road by the public, is a public nuisance. At common law `any contracting or narrowing of the highway is a nuisance.' 1 Russ. Cr. 346. It is immaterial that sufficient space is left on either side of the obstruction for the passage of the public, relatively to the question here decided. The public have the right to the unobstructed use of the whole road as it was acquired by the county. 3 Elliott on Roads and Streets (3d ed.), § 828." The decision was clearly based upon actual obstruction of the traveled portion of the highway. In such case, actual interference or inconvenience is immaterial. Compare Hanbury v. Woodward Lumber Co., 98 Ga. 54 (2) (26 S.E. 477); Sanders v. Atlanta, 147 Ga. 819 (95 S.E. 695). So, in Mayor c. of Columbus v. Jaques, supra, the complaint related to the proposed construction of a market-house in the center of "one of the most public thoroughfares and commonly used streets in the city;" and it was stated: "The nuisance here complained of is of a particular kind, termed in the books apurpresture." Also "`that *Page 829 
all injuries whatsoever, to a highway, as by digging a ditch or making a hedge across it, or laying logs of timber in it, or by doing any other act which will render it less commodious to the King's subjects, are public nuisances at common law.'" (Italics ours.) Considered in the light of its facts, the decision in nowise sustains the contention that every purpresture must be treated in law as a public nuisance. Nor do we deduce such conclusion from any of the following cases cited and relied on by counsel for the defendant in error: Hart v. Albany, 9 Wend. (N. Y.) 571 (24 Am. D. 165); People v. Vanderbilt, 28 N.Y. 396 (84 Am. D. 351); People v. Harris, 203 Ill. 272 (67 N.E. 785, 96 Am. St. R. 304); State v. Kean, 69 N.H. 122 (45 A. 256, 48 L.R.A. 102).
The petition did not allege more than a bare purpresture; and hence did not show a public nuisance. The solicitor-general not being authorized to act on the information of citizens, except in case of a public nuisance (Code, § 72-202), and such not being shown, the petition should have been dismissed on general demurrer. In this view, it is unnecessary to pass on the special demurrers or upon any question as to the authority of the solicitor-general in reference to public nuisances without the limits of his circuit.
3. After issuance of the writ of error to review the judgment overruling the demurrers, and during the pendency of such writ of error, the case proceeded to trial and resulted in a verdict in favor of the plaintiff. A motion for new trial was overruled, and this judgment is brought under review by a separate writ of error (Case No. 13843). The undisputed evidence, consisting of an agreed statement, showed that the proposed pipes for the passage of petroleum would be inserted through and across the area occupied by the highway, merely by boring horizontally four feet beneath the surface, "without disturbing the surface itself;" that the products to be so transported would be enclosed not only by a pipe but also an iron casing, and that this is "the usual and standard method . . approved . . by State highway boards and similar bodies." (Italics ours.) Under this evidence and the principles ruled in the preceding division, a finding was demanded as a matter of law that the alleged "purpresture" would not and could not interfere with the public use, and is not a public nuisance.
The ruling just made being controlling, it is unnecessary to determine the nature and character of the title held by the State *Page 830 
Highway Board under deeds from landowners, as shown by the evidence. Nor is it necessary to determine whether, even if the pleadings and proof had otherwise shown that the proposed construction would constitute a public nuisance, it would not and could not be so judged in view of the fact that the President of the United States has issued a proclamation declaring an "unlimited national emergency," and under an act of Congress, approved July 30, 1941, has issued a proclamation further declaring that the completion of this particular pipe-line is "necessary for national defense purposes."
It may not be amiss to say that since it appears that the suit was instituted by the solicitor-general without authority, in that no public nuisance is shown, it is not only unnecessary to decide other questions, but as a matter of right they should not be decided.
Since the action should have been dismissed in response to the general demurrer, it might be more appropriate as a matter of procedure to dismiss the writ of error in case No. 13843, with direction that the verdict and final decree in favor of the plaintiff be vacated. Jones v. Hurst, 91 Ga. 338 (3) (17 S.E. 635): Knox v. Laird, 92 Ga. 123 (3), 128 (17 S.E. 988);Tate v. Goode, 135 Ga. 738 (71 S.E. 571, 33 L.R.A. (N.S.) 310). The practical result, however, will be the same; and in the circumstances we have concluded to pass upon each bill of exceptions, upon its separate and independent merit. As to the right of the defendant to bring the second writ of error, seeMontgomery v. King, 125 Ga. 388 (54 S.E. 135); Bandy v.Frierson's Sons, 138 Ga. 515 (75 S.E. 626).
Judgment reversed in both cases. All the Justices concur.