## MAY *et al.*, executors, *v.* LEVERETTE *et al.*

BECK, P. J. This was a suit in equity, brought for the purpose of having a deed, made and executed by a husband to his wife, adjudged and decreed to be void on the grounds, first, that the deed was made to delay, hinder, and defraud creditors, which purpose was alleged to have been known to the wife; and, second, that the deed was a voluntary deed, executed by the grantor at a time when he was insolvent. The defendant's answer denied the allegations contained in both of these grounds. *Held:*

1. Under the pleadings and the evidence the court did not err in giving the following charge to the jury: "A husband may be indebted to the wife for the rents of her separate real estate, and such bona fide indebtedness is a valuable consideration to support a deed from him to her."

2. Nor did the court err, as against the plaintiffs, in giving the following charge: "On an issue such as is just described, the solvency or insolvency at the time of the making of the conveyance attacked as fraudulent is relevant, but the range of the evidence as to time should be so restricted as to reflect the financial condition of the grantor at the time of the making of the deed."

3. The instruction, "that if you find that Mr. T. J. Leverette had, at the time of the making of the deed to his wife, enough property left with which to pay his debts, and that he had no intention to hinder, delay, or defraud his creditors, then in that event I charge you that it would be your duty to find for the defendants, and this notwithstanding the fact that you might believe that there was no real consideration paid by Mrs. Leverette to Mr. Leverette for the execution of the deed," was not error, under the evidence and in view of the issues involved.

4. The following charge is excepted to: "I charge you further that the return of property for taxation is not conclusive evidence of title in the one making the return, or in the one in whose name the property is returned. Tax returns may be considered only as a circumstance in determining the title to property returned. Should property be returned for taxation by one having no title thereto, the return would not put title in the one so making the return. Omission to return property in the name of one who owns the legal title thereto would not affect the title of the true owner. So tax returns may be considered only as a circumstance in determining title to property." This charge properly instructed the jury as to the issue presented for their determination.

5. The question of the solvency or insolvency of a named party was material

Appeal and Error, 4 C. J. p. 994, n. 56; p. 999, n. 17; p. 1032, n. 36; p. 1039, n. 15.

Evidence, 22 C. J. p. 181, n. 81; 87 New; p. 199, n. 36.

Fraudulent Conveyances, 27 C. J. p. 502, n. 45; p. 503, n. 64; p. 506, n. 95; p. 551, n. 80; p. 558, n. 29; p. 786, n. 86; p. 796, n. 14 New; p. 804, n. 97; p. 806, n. 15; p. 807, n. 19; p. 819, n. 4 New; p. 842, n. 40; p. 843, n. 42, 43; p. 845, n. 66.

Trial, 38 Cyc. p. 1376, n. 99; p. 1599, n. 33; p. 1676, n. 74; p. 1707, n. 98; p. 1785, n. 90; p. 1911, n. 25.

Witnesses, 40 Cyc. p. 2273, n. 14; p. 2274, n. 17.

for the consideration of the jury; and where the plaintiff had alleged that this party was insolvent, it was not error for the court to instruct the jury that the burden was on the plaintiffs to sustain this allegation by a preponderance of the evidence.

6. Another portion of the charge was as follows: "Now, gentlemen of the jury, take this case and apply the rules of law given you in charge to the testimony as you find it. You are the sole judges of the facts of the case. My duty is merely to give you in charge the rules of law applicable to the facts and circumstances as delivered from the witness stand, and as applicable to the pleadings in the case. I do not wish to invade the province of the jury or even to intimate to you what has or has not been proven in this case. If during the progress of the trial your mind has become impressed with the idea that the court has intimated what has or has not been proven in the case, I wish now to disabuse your mind of such impression. I have no intention so to do." This was excepted to upon the ground that it made no reference to the documentary evidence, thereby limiting the jury to the consideration of the oral evidence. Where documentary evidence has been introduced, the charge should not contain expressions which might seem to limit the jury to a consideration of the oral testimony only, and the extract quoted is not entirely free from criticism in that respect; but in view of the character of the two or three simple documents introduced, and the other portions of the court's charge, this inaccuracy does not require the grant of a new trial.

7. The charge complained of in the 7th ground of the motion for new trial, while not entirely accurate, stated in substance the law controlling the issue to which that charge related, and the inaccuracy referred to was not of such a nature as to require the grant of a new trial.

8. The court did not err in refusing a written request to charge the jury that "If the effect of the deed was to hinder, delay, or defraud creditors, and such was Mr. Leverette's intention in making the deed, it makes no difference whether Mrs. Leverette knew of such intentions or not."

9. The court properly admitted the testimony of one of the joint defendants, who was also an administrator of the grantor in the deed, over the objection that the witness was an administrator of the grantor and therefore incompetent to testify to a fact. There is no merit in this objection. The situation here arising clearly falls within none of the exceptions to the general rule as to the competency of witnesses, contained in § 5858 of the Civil Code.

10. But this same witness and other witnesses were permitted to testify what they had heard the grantor in the deed say of his wife, the defendant who is contending that the deed sought to be set aside was not without valuable consideration, saying that the wife had earned and made money in the several various ways related by the witnesses, and had turned this over to him, the grantor. This evidence tended to show a valuable consideration for the deed, and to rebut the contention of the plaintiffs that the deed was a voluntary conveyance; and the objection to it on the ground that it was hearsay properly raised this point, and the court erred in overruling it. The court, however, did rule that the testimony was allowable for the sole purpose of "explaining conduct and

ascertaining motive of the grantor in the deed, and so instructed the jury." This restriction of the application of the evidence did not cure the error. The evidence objected to was very material upon one of the controlling issues in the case; it was hearsay, and did not fall within the rule that in certain instances hearsay evidence is admissible to explain conduct and ascertain motive. This ruling is applicable to the testimony of other witnesses, the admission of whose testimony is complained of in several grounds of the motion.

11. Evidence of what land was sold for per acre at sheriff's sale was admissible on the question of the value of such land; but a witness who bid in the property at such sale at a stated price, as agent for another, could not state what was "the maximum limit given him by his principal to bid on the property." Such evidence was not admissible for the purpose of establishing the value of the property, and the court erred in admitting it.

12. The testimony of the grantee in the deed in question, who was the wife of the grantor, was objected to and admitted over objection. A part of the testimony was clearly admissible; and the objection going to the entire testimony, its admission will not be held reversible error, though portions of it were objectionable.

13. In view of the issues in this case, the court did not err in not submitting to the jury the question as to whether or not the deed sought to be set aside and canceled had been delivered.

         *Judgment reversed. All the Justices concur.*

         No. 5660. JULY 16, 1927.

Equitable petition. Before Judge Hodges. Lincoln superior court. August 28, 1926.

On March 20, 1918, T. J. Leverette, J. G. Chenault, and L. S. Wilkes bought a tract of land from Mrs. Frances Coleman. She gave them a bond for title, and they gave her their joint note for $8004, due January 1, 1919. All the parties resided and the land was located in Lincoln County, Georgia. More than $5000 was paid on the note. On August 28, 1922, Leverette made to his wife, Mrs. Julia E. Leverette, a deed to certain land therein described. The deed was duly recorded in 1922. Leverette died in September, 1923. On February 14, 1924, the plaintiffs, as executors of Mrs. Frances Coleman, brought this suit against Mrs. Leverette and against the executors of T. J. Leverette, to cancel and set aside the deed from Leverette to his wife, on the ground that the same was void: first, because the deed was made for the purpose of delaying or defrauding creditors, and this purpose was known to Mrs. Leverette at the time of taking the deed; and second, because the deed was not for a valuable consideration, and rendered T. J. Leverette insolvent at the time of making the same.

The charge referred to in the 7th headnote was as follows: "I read to you the Code: Every deed made with the intention to delay or defraud creditors, and such intention known to the party taking, would be void. The party taking in this case is Mrs. Leverette. The party making the deed would be Mr. Leverette. Applying that principle of law to this case, I charge you as follows: If you believe from the testimony that T. J. Leverette executed the deed in question to his wife, Julia Leverette, and with the intention to delay or defraud his creditors, and such intention was known to Julia Leverette, then and in that event such deed would be void as to such creditors, and you would so find by your verdict. On the other hand, I charge you that if you believe that the execution of the deed in question was based on a valid consideration and without any notice or ground for reasonable suspicion, that same would be valid, and you would so find by your verdict. I read you that section of the Code again: A deed made with the intention to delay or defraud creditors, and such intention known to the party taking, is void. A bona fide, that is, a good transaction, on a valuable consideration and without notice or ground for reasonable suspicion, shall be valid. It is a question of fact for you to determine in the first instance whether or not Mr. Leverette made that deed with the intention of defrauding any creditors; and if he did, why then you would inquire as to whether or not she, Mrs. Leverette, knew of it or had reasonable ground for knowing it. If she did not, and the deed was based upon a valuable consideration, why then the deed would be good. On the other hand, if he intended to defraud his creditors by making that deed, and it was known to his wife, then the deed would be void. Every voluntary deed or conveyance not for a valuable consideration, made by a debtor insolvent at the time of such deed, such a deed as that would be void."

The testimony referred to in the 12th headnote is as follows: "I am the widow of the late Mr. T. J. Leverette of Lincoln County. I know the place that has been referred to in the trial of this case as the Leverette home place. Before we moved to Lincolnton Mr. Leverette and I lived at the old home place. Mr. Leverette gave that place to me a good many years before we moved down here. I couldn't tell you how long, but it was a good many years. Mr. Leverette always provided a way for me to make money for my

own personal account. As to what provision he made for me to make money of my own—just any way that I could make it, and I always had a cook and she made my cotton, and I made money in different ways at my work. He always gave me a way to make it. My cook worked in the field and made cotton, and I turned it over to him. The cotton that was produced by the labor of my cook belonged to me. He gave me a cotton-patch to work. As to who used the proceeds of the cotton, my husband attended to everything of my business as long as he lived, but he gave all this to me. I used some of it, but he used what he wanted. He got it when he wanted it. Since he gave the home place to me I have had some improvements made on it. I couldn't say what improvements I have made since it was given to me, but it is between six and seven hundred, may be eight hundred dollars, or more than that I suppose. I paid for these improvements. Mr. Leverette always used what I made. He always told me he would give it back to me in any way I wanted it. At the time he made this deed to me in August, 1922, he was making this deed to me for money he had used of mine. At that time he did not owe any debt other than this note given for the purchase of this Coleman land—not that I know of. I have not since then learned of any indebtedness other than that. At the time he made the deed to me in August, 1922, he had a sufficient amount of property left to pay that note, plenty and more. I did not know or have any knowledge that Mr. Leverette was making that deed to me, or that he was doing it for the purpose of hindering, delaying, or defrauding any creditors whatsoever. I would say on my death-bed that he never made any deed for that effect. I did not know of any such purpose on his part or intention—there was not any."

The jury returned a verdict for the defendants. The plaintiffs excepted to the refusal of a new trial.

*Clement E. Sutton,* for plaintiffs.

*Homer Legg, Burnside & McWhorter,* and *B. F. Walker,* for defendants.