DEEN *v.* BAXLEY STATE BANK; *et vice versa.*

Nos. 13704, 13735.  MAY 22, 1941.

Oliver & Oliver and *Fred B. Davis,* for plaintiff.

*M. E. Wood, Dave M. Parker,* and *J. B. Moore,* for defendant.

BELL, Justice.  Mrs. Edith Miles Deen filed a suit against Baxley State Bank, seeking injunction to restrain the defendant, its agents and officers, from further proceeding with an advertisement and proposed sale of land in pursuance of a power of sale contained in a security deed, and praying for cancellation and general relief. The petition was amended four times, one of the amendments striking a previous amendment.  The judge sustained a general demurrer to the petition as amended, and later vacated the order on application of the plaintiff, after notice and hearing thereon. Afterwards, but on the same day, he passed another order, again sustaining the general demurrer and dismissing the action.  The plaintiff sued out a bill of exceptions complaining of the latter judgment.  The defendant brought a cross-bill of exceptions, assigning error on the judgment setting aside the original order.

We deal first with the cross-bill of exceptions. The original order sustaining the general demurrer was dated November 26, 1940, and appeared to have been entered "at chambers, Hazlehurst, Ga." The petition to vacate it was filed on January 25, 1941, and contained the following allegations: On October 15, 1940, plaintiff's counsel, Honorable Wade H. Watson, submitted to the judge two amendments to her original petition. On November 24, 1940, Mr. Watson "was taken suddenly ill, and since said date has been totally unable to attend to his practice or represent his clients." At the time the judge entered the order of November 26, dismissing the action, he was unaware of the illness of Mr. Watson. The plaintiff did not learn of such order until some time in the following January, when she "saw" in a newspaper that the property was again being advertised for sale. She immediately procured additional counsel, since Mr. Watson "could no longer represent her." The petition to vacate further alleged that the original petition and "said two amendments" had been lost, and prayed for rule nisi calling on the defendant to show cause why copies should not be established in lieu of the lost originals, and "why the order of the court, dated November 26, 1940, on the general demurrer should not be vacated and set aside, and a new order entered on said demurrer, dated as of the date of the hearing hereon." The defendant demurred generally and specially to the petition to set aside the judgment, and filed an answer. On January 29, 1941, after hearing evidence pro and con, and considering the demurrers, the judge passed an order setting aside the former order. It appears that although he considered the demurrers he did not expressly rule thereon, and there is no assignment of error on his failure to do so. The defendant in its cross-bill of exceptions makes the following contentions: That under the pleadings and the evidence the judge abused his discretion; that he had lost jurisdiction, for the reason that the original order was entered in vacation, and more than thirty days, the period for excepting thereto, had expired before the petition to vacate it was filed; and finally, that while the order vacating or setting aside the former judgment was a term order passed during the October term, 1940, the rule as to the power of the court to set aside a judgment rendered at the same term would not apply, as here, to a previous *vacation* order.

The evidence supported the allegations as to the illness of the

plaintiff's attorney, the judge's unawareness of it, and the plaintiff's ignorance of the order dismissing her case until some time in January. In the circumstances it can not be said that the judge abused his discretion, so far as related to the issues of fact. Nor did the judge lose jurisdiction to set aside his original order, merely because the time for excepting thereto had passed, if he otherwise had authority to deal with it as though it were an order passed during the same term. The superior court has plenary power over its orders and judgments during the term at which they are entered, and may amend, correct, or revoke them, for the purpose of promoting justice. *Berrien County Bank* v. *Alexander,* 154 *Ga.* 775, 778 (115 S. E. 648). While the discretion in such case is not unbounded, and should be exercised only upon sufficient cause shown (*Cahoon* v. *Wills,* 179 *Ga.* 195, 175 S. E. 563; *Hurt Building Inc.* v. *Atlanta Trust Co.,* 181 *Ga.* 274 (4), 182 S. E. 187), the mere fact that the time for suing out a writ of error has elapsed would not take away the discretion or jurisdiction, otherwise existing, to set aside the former order, for meritorious cause. The time limit is the end of the term, not the time when the right of exception expires. A motion to set aside and vacate a judgment can not be determined by any fixed rule, but depends on the circumstances of the case, and exercise of the power to vacate a judgment rendered during the term will not be controlled on review, unless abused. *Storey* v. *Weaver,* 66 *Ga.* 296; *Bowen* v. *Wyeth,* 119 *Ga.* 687 (46 S. E. 823); *Phillips* v. *Phillips,* 124 *Ga.* 912 (53 S. E. 457); *Clark* v. *Ramsey,* 138 *Ga.* 726 (75 S. E. 1128); *Gaines* v. *Gaines,* 169 *Ga.* 432 (150 S. E. 645). While it seems in this case that the judge passed on the demurrer after taking the case under advisement, and that no further argument or appearance before judgment was contemplated, still in the meantime the attorney for the plaintiff became ill, and if the judge had known of this fact he could have considered it as a good reason for postponing judgment, lest the right of the plaintiff to move against it in a timely and proper proceeding might be imperiled. Under the evidence, the judge was authorized to find, not only that Mr. Watson became ill, but that his condition was such that his failure to notify either the judge or his client of it, before rendition of the judgment, was excusable. Compare *Sims* v. *Sims,* 135 *Ga.* 439 (69 S. E. 545); *Brown* v. *Verekas,* 164 *Ga.* 733 (139 S. E. 344). In the circum-

stances the judge was further authorized to find that the plaintiff was not at fault in relying solely upon her attorney, the matter being a pure question of law, to wit, whether the petition as amended was subject to dismissal on general demurrer. The case does not depend alone on whether the mere right of exception was lost from such cause. If Mr. Watson had been well enough, he could and might have moved to vacate the judgment for what he conceived to be error, instead of excepting directly; and, as we shall see later, a motion based solely on that ground would have been meritorious. *Kerr* v. *Kerr*, 183 *Ga.* 573 (189 S. E. 20); *Phillips* v. *Aycock*, 89 *Ga.* 725 (15 S. E. 624); *Van Dyke* v. *Van Dyke*, 120 *Ga.* 984 (48 S. E. 380). In the circumstances, the situation was one calling for exercise of a sound legal discretion on the part of the judge, and we can not say that such discretion was "manifestly abused." *Bowen* v. *Wyeth*, supra; *Jones* v. *Garage Equipment Co.*, 16 *Ga. App.* 596 (85 S. E. 940); *Sherman* v. *Stephens*, 30 *Ga. App.* 509, 517 (118 S. E. 567).

In what has just been stated, we have merely assumed that the rule as to control of judgments during the term is applicable. We next consider whether this rule *does* apply, in view of the fact that the original order sustaining the general demurrer was rendered at chambers or in vacation. There is a kind of negative pregnant to the contrary in *Butters Manufacturing Co.* v. *Sims*, 178 *Ga.* 775 (2) (174 S. E. 623), but the question was not for decision in that case. The cross-bill of exceptions recites that the order of November 26, 1940, "had been granted at the October term, 1940, of Appling superior court, which term was still in session on January 29, 1941," this latter being the date of the *term* order setting aside the former order dismissing the plaintiff's action. We shall not determine the question whether in view of this recital the former order should be treated as one passed during the term and in open court, despite its own recital to the contrary; for even assuming that it was in fact passed in vacation, we are nevertheless of the opinion that it could be revoked or set aside during the October term, to the same extent as if it had been a term order. It was as a matter of fact rendered during the *period of time* that the October term was in session; and unless the judge had authority to vacate it during that term as though it were a term order, it would necessarily follow that the judge acting as a court would have less

authority over a vacation order passed during the period of the term than he would over one granted in open court. This, we think, is not the law. In *Galloway* v. *Mitchell County Electric Membership Corporation,* 190 *Ga.* 428 (3) (9 S. E. 2d, 903), it was held that a judge of the superior court had authority during a certain term, after notice and hearing, to set aside an order sustaining demurrers passed in vacation but during the period of such term. That ruling seems to cover the point here under consideration. Accordingly, it must be held that the order of November 26, 1940, though passed at chambers, was subject to change or revocation during the then existing October term, to the same extent as if it had itself been a *term* order. Having thus applied the term rule, we do not decide whether the discretion of the judge would be different and more limited under some other rule. The assignments of error in the cross-bill do not show cause for a reversal of the judgment therein complained of.

■ Did the original petition as amended, in which the plaintiff sought injunction and cancellation, state a cause of action? In other words, was it error to dismiss such action on general demurrer? The petition as amended, sometimes hereinafter referred to merely as the petition, was very lengthy; and although some quotations will be made, we shall endeavor mainly to state its substance only. It was also indefinite in some respects, but there was no special demurrer; and after reading it carefully several times we have reached the conclusion that it was sufficient to show, as it was evidently designed to do, that the security deed held by the defendant bank and under which it was proceeding had as its consideration a debt of the plaintiff's husband, she being a married woman, and that because of this fact the deed was void and subject to cancellation. Counsel for the defendant argue the contrary, contending that on proper construction of the petition it should be taken to mean that the plaintiff purchased the land subject to a debt of her husband relating thereto, which she merely assumed as a part of the purchase-money. This particular contention will be deferred for later consideration in this opinion.

A "wife . . may not bind her separate estate by any contract of suretyship nor by any assumption of the debts of her husband, and any sale of her separate estate, made to a creditor of her husband in extinguishment of his debts, shall be absolutely void."

Code, § 53-503; *Carlton* v. *Moultrie Banking Co.,* 170 *Ga.* 185 (152 S. E. 215); *Magid* v. *Beaver,* 185 *Ga.* 669 (196 S. E. 422). The plaintiff is seeking to recover nothing of the defendant bank, but is asking only for injunction and cancellation. Accordingly, if she alleged enough to show that the deed was made to secure a debt of her husband, she is entitled to the relief sought, unless it appeared at the same time that recovery should be denied on some other principle. In such case the petition need not be as particular or as definite in its allegations as if the plaintiff were seeking to recover money or other thing of value. *Carswell* v. *Hartridge,* 55 *Ga.* 412; *Hollis* v. *Covenant Building & Loan Association,* 104 *Ga.* 318 (31 S. E. 215). The plaintiff alleged in substance that in the year 1930 she and her husband were in possession of a tract of land which had been conveyed by another person to the Federal Land Bank of Columbia, as security for a debt which her husband had assumed. He was unable to pay the debt, and the land was sold by Federal Land Bank, under a power of sale contained in its security deed. This land consisted of more than 300 acres, and may hereinafter be referred to as the Upchurch place. There is no contention that the sale by the Federal Land Bank was invalid, but according to the petition it placed title absolutely in the land bank, free of all equity or interest of any other person. The plaintiff was desirous of purchasing this property, and through her husband was negotiating with the Federal Land Bank for this purpose. Before the sale was completed, however, D. N. Stafford, an officer of Baxley State Bank, the defendant herein, "got in touch with petitioner's husband and represented to him" that he "could make the trade at a less price than petitioner could, because of his banking connection and business relations with the Federal Land Bank," and Stafford agreed to make the trade for petitioner, representing that he would take a deed to himself and afterwards convey the land to petitioner upon her assuming all of the purchase-price due to the land bank, except such cash payment "as said bank required him to make in closing the deal," for which "cash payment advanced on said purchase-price petitioner was to give him a security deed over another tract of land which she owned," consisting of about eighty acres known as the Miles tract. The petition further alleged that in all of the foregoing and subsequent negotiations and transactions Stafford was acting for and in behalf of the defendant

for the purpose of collecting a debt which the bank held against petitioner's husband, although the plaintiff was not, until recently, aware of any such plan or intention. Through her husband she agreed to buy the land through Stafford on the terms indicated, but after purchasing the land in his own name Stafford conveyed it to the defendant bank, so that in closing the deal petitioner obtained a deed from the bank, and not from Stafford, as originally contemplated. Before thus closing the transaction Stafford had reported that in order to make the trade it would be necessary for him to pay down cash $700, and that he would make this payment and "give his papers to the said Federal Land Bank for the balance of the purchase-price on a long-term loan, and then he would make deed to your petitioner to said land and let her assume" the balance of the purchase-price to the Federal Land Bank. For such cash payment of $700 the plaintiff was to make to Stafford a security deed covering her separate property known as the Miles tract. The transaction was finally consummated with the defendant bank, on the representation of Stafford that the matter was being handled according to the previous agreement. It so happened, however, according to the allegations as we construe them, that the plaintiff, after obtaining a deed from the defendant bank conveying to her the Upchurch tract, was required to convey to the bank both of the described tracts of land to secure the sum of $3,208, which was the debt of plaintiff's husband "which he owed and had owed for some time to the Baxley State Bank," and which "is no part of the purchase-price of the said Federal Land Bank property which she was buying (the Upchurch tract)," but that she "had no notice thereof at the time she executed said security deed, and had no notice that the same was for the payment of the debt due by her husband."

It is insisted by counsel for the defendant that the action was properly dismissed on demurrer, for the reason that it appears that the defendant bank did advance to the Federal Land Bank the sum of $700 as a cash payment, and that the plaintiff can not now obtain the equitable relief prayed for without refunding this sum to the defendant, which she has not done or offered to do. We can not sustain this contention. While on casual reading of the petition it may leave the impression that either the bank or Stafford acting for it had paid this sum as an "advance" on the purchase-

price, and the plaintiff in taking the deed from the bank merely assumed the remainder, yet on careful study of the petition and amendments we construe the allegations as meaning only that Stafford had reported to the plaintiff or her husband that this sum had been paid, when as a matter of fact nothing whatever had been paid on the purchase-price either by Stafford or the bank, and that no obligation had been made or assumed by either for the payment of any part of such purchase-money. The petition several times refers to "what he [Stafford] *claimed* to have paid on the purchase-price," not to anything which either he or the bank had actually paid or promised the seller to pay. (Italics ours.) This is made clear by the allegations which appear in paragraph 17 of the petition, as follows: "Petitioner further shows, that the debt for which said security deed is given is the debt of her husband, and that the same does not represent any part of the purchase-price which she was to pay for said land, that the price she was to pay for said Federal Land Bank property is ample and about what it was worth, and that as a matter of fact she has ascertained the fact to be, and she hereby alleges, that the said D. N. Stafford did not pay to the Federal Land Bank any part of the purchase-price, but executed to the said Federal Land Bank notes and security deed over said land for the full amount of the purchase-price which she was to pay said bank in the sum of $3139.67, which indebtedness she assumed in making the purchase of said land and has been paying thereon to the amount of approximately $1100. Petitioner alleges that the Baxley State Bank has no right whatsoever to proceed to collect said notes or to proceed and sell your petitioner's property, either her individual property put up as security or her equity in the Federal Land Bank property which she bought; that said notes and security are without consideration as against this petitioner, and the debt is wholly the debt of her husband. She is entitled to have the court of equity intervene and restrain said sale, because she is a married woman and is not required to pay or assume her husband's debt; and further, being without consideration, it would be very unjust to require her to do so and thus carry out a scheme and plan to defraud your petitioner, as heretofore alleged upon the part of the Baxley State Bank and D. N. Stafford, to take your petitioner's property and rights of property in payment of her husband's debt."

In the first amendment reference is again made to "the amount of $700 in cash which he, the said Stafford, claimed he had to pay on the purchase-price, but which she [the plaintiff] later learned he did not pay." In the same amendment the plaintiff further alleged that "said security deed and note is without any consideration whatever, and it was given to secure the amount of her husband's debt, and has no other consideration, and is void." In the second amendment the plaintiff alleged that since the filing of her original petition she had learned that Stafford, in making the trade with the Federal Land Bank, had "paid out the sum of $50 in cash" and had paid "taxes then due on the property" amounting to about $700, "which said payments were a part of the purchase-price," and she "hereby agrees that judgment be rendered in favor of" the defendant for these sums. The third amendment struck the second amendment entirely, and alleged on the contrary that on investigation "petitioner has ascertained that the payments were not made by the said Stafford as claimed by him in buying the property for her, and she does not agree that the items as specified in said [second] amendment were paid by said Stafford or defendant bank, and denies that she is liable for the items mentioned therein." The third amendment contained still other allegations, and again mentioned the amount "which was to be paid in cash for which she [the plaintiff] understood she was giving the security deed, and the balance assumed by her, which she understood was the amount due the Federal Land Bank, less the said cash payment as heretofore stated," but there is nothing in this amendment which can properly be taken as withdrawing or qualifying the original allegation to the effect that nothing had been paid either by Stafford or the bank on the purchase-money. This amendment appears to have been made merely for the purpose of offering to pay the taxes and the small sum of $50 referred to in the second amendment, if it should "be established by proof" that these payments had been in fact made, but petitioner "does not admit such payments were made as mentioned in the [second] amendment, all of which is hereby stricken."

Nor did the fourth and final amendment have the effect of retracting or changing the original allegations in reference to the cash payment which she understood the bank or Stafford *would* make, but which she alleged was *never* made by either of them;

the allegations of this amendment being. as follows: "Petitioner amends by alleging that after she signed the note and security deed which she *understood* to be for $700 to procure the said amount in cash to be applied on the purchase-price of the Federal Land Bank land for $3139.67, and assume the balance of the said purchase-price, she did [not] know or learn of different amount of the deed, or that the same was given to defendant bank and for the larger amount and for her husband's debt, as in said petition set out, until the defendant bank began advertising said lands for foreclosure, and at that time she had paid out on the Federal Land Bank debt which she h'ad assumed $1000 or more, reducing the principal; and besides, under her understanding of purchase, the Baxley State Bank *had nothing in said property and so far as she learned had not put out anything on said property,* and therefore she could not afford to tender said *land* back to the Baxley State Bank, for the reason that it was not entitled to have deed to same according to her understanding of the trade, ·which she understood prior thereto was made entirely by and through Stafford, and to tender said land to said defendant bank would have caused her to lose all she had paid out on said land on the debt for the purchase-price which she had assumed to said Federal Land Bank." (Italics ours.) This amendment appears to have been made for the purpose of avoiding some contention that the land purchased through the bank ought to have been restored to the bank as a condition precedent to grant of the relief sought, and it can not reasonably be construed as showing any payment on the purchase-money by the defendant, contrary to the denial of such payment as contained in the original petition. If the petition had shown upon its face, either expressly or impliedly, that any part of the purchase-money had been paid by or for the bank, or that any binding obligation for such payment had been made, it may be true that the plaintiff could not maintain the action for equitable relief without averring a repayment of this sum or a tender thereof before suit, or alleging some valid reason for her failure to do so. Code. § 37-104; *Echols* v. *Green,* 140 *Ga.* 678 (5) (79 S. E. 557); *Chandler* v. *Keese,* 160 *Ga.* 309 (127 S. E. 655) ; *Hendrix* v. *Bank of Portal,* 169 *Ga.* 264 (5) (149 S. E. 879) ; *Williams* v. *Fouché,* 157 *Ga.* 227 (121 S. E. 217) ; *Jackson* v. *Reeves,* 156 *Ga.* 802 (7) (120 S. E. 541). The applicability of the equitable principle re-

ferred to seems to be the main contention of the defendant, and for this reason we have discussed the petition as above more at length than we might otherwise have done. Upon a minute examination of the petition as amended, we can not agree that it calls for or would justify the application of this principle. "In equitable proceedings it is generally necessary to allege a tender of the precise sum of an indebtedness which may be admitted, no matter how small the sum. Per contra, when an indebtedness is denied, a tender is unnecessary and impossible." *Pope* v. *Thompson,* 157 *Ga.* 891 (2) (122 S. E. 604).

In the same connection it is insisted by counsel that it appears from the petition that the plaintiff is seeking cancellation or rescission of a contract of sale in reference to the Federal Land Bank or Upchurch tract, and that she can not have the equitable relief for which she prays without vacating this property and restoring it to the defendant or alleging a tender or offer to do so. Nor can we sustain this contention. It is true that the plaintiff wobbled a little in her fourth amendment with respect to this matter. She alleged that she could not afford to tender the land back, because she would lose what she had paid on the purchase-price to the Federal Land Bank. Now, this might not be a good reason for her failure to restore this property, if the other circumstances were such that she ought to have done so. Equity could have molded a decree to protect her interest. Code, § 37-1203; *Pope* v. *Thompson,* supra. Yet the fact that she gave a poor reason did not place upon her a duty which did not otherwise rest upon her in equity. She is not seeking to cancel the deed which she received from the bank, conveying this property to her, subject to the purchase-money due to the Federal Land Bank. She is asking no relief whatever in regard to that instrument. What she is attempting to do is to enjoin the bank from selling this property and the other tract under a security deed alleged to have been made solely for a debt of her husband. If her allegations with respect to the latter deed be true, she is entitled to have this deed canceled, without reference to the deed representing her purchase. The latter transaction, according to the petition, is valid, and she is seeking to stand by it. There is no reason in law or in equity why she can not do so, and at the same time cancel the invalid deed conveying her *equity* in the land to secure the debt of her husband. So our

conclusion is that the petition did not require a tender of money or of land; and that it stated a cause of action, unless it was defective for some other reason yet to be considered.

Under the specific allegations of fact, it does not appear that the plaintiff purchased this land subject to a debt of her husband existing at the time as a claim against it, as contended. Accordingly, we can not apply decisions like those in *Daniel* v. *Royce,* 96 *Ga.* 566 (23 S. E. 493), and *Pinckney* v. *Weil,* 183 *Ga.* 567 (189 S. E. 8), holding in effect that where a wife purchases property which is subject to an encumbrance placed thereon by her husband, she may assume as a part of the purchase-money an obligation to discharge it, in order to secure an unencumbered title, and that in so doing she is not assuming a debt of her husband in the sense of the Code, § 53-503.

Nor does the petition show any reason why the plaintiff should be estopped. The allegations reasonably show that every fact and circumstance of which she now complains was fully known to the bank or its officer, Mr. Stafford. In such case, there would be no place for the principle of estoppel.

Another contention is that the plaintiff is seeking rescission and should restore the status. This contention has already been mentioned incidentally. She is not attempting to rescind the contract by which she purchased the land, but is attacking a deed which she alleges was made solely to secure a debt of her husband.

Finally, it is urged that while the plaintiff complains of fraud and misrepresentation, she does not allege any specific facts constituting fraud, nor does it appear that she can not read and write. The insistence seems to be that since it must be inferred that she was able to read and write, and understand the transaction fully, she has no valid ground of complaint. It is unnecessary to allege fraud in order to cancel a deed which is void because it was given by a wife to secure a debt of her husband. The Code, § 53-503, does not so qualify her right, but simply declares that any such transaction "shall be absolutely void." It matters not whether the plaintiff was defrauded, or whether she had full and intelligent knowledge of the transaction. It is enough to show that the deed was made or taken to secure an actual debt of her husband; and this shown, the plaintiff would be entitled prima facie to the relief of cancellation, and also to injunction, where the defendant is pro-

ceeding against the land, as alleged in this case. The petition stated a cause of action, and the court erred in dismissing it on general demurrer.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur.*