1. In a suit for specific performance of a parol contract for the purchase of land, where the evidence and the admissions of the defendant sellers showed that the contract was made as alleged, that the purchase-money has been paid, and that the purchaser took possession and made valuable improvements on the land, the verdict in favor of the petitioner was authorized by the evidence.
(a) Evidence introduced by the defendant who was not the seller, which might have been sufficient to have authorized a finding that she made the contract of purchase, paid most of the purchase-money, made valuable improvements on the land, and was entitled to have the property conveyed to her, did not render the verdict in favor of the petitioner invalid on the ground that it was without evidence to support it.
2. The provisions of the Code, § 38-1603, to the effect that where a suit is instituted or defended by a representative of a deceased person, the opposite party may not testify to transactions had with the deceased, did not render inadmissible testimony of the petitioner, who sued individually as sole heir of her deceased father and as administratrix of his estate, as to transactions that she had had with her father.
 No. 15636. NOVEMBER 15, 1946.
The petition is brought by Willie Eva Howard as an individual and as administratrix of the estate of Roman Brown. The defendants named are Scott Nixon Francis Cobbs Nixon, Margaret Nixon Mobley, Gwinn Huxley Nixon, and Emma Lane. The allegations are in substance as follows: Roman Brown died June 18, 1944, intestate, leaving the petitioner as his sole heir at law, she being his child. During his life, to the best of the petitioner's knowledge and belief, on or about August, 1943, Roman Brown made a contract with the defendants, except Emma Lane, whereby he purchased from the defendants a described tract of land for $200, and paid at the time of making the contract $50 cash thereon, the remainder to be paid in small payments. He went into possession *Page 617 
immediately, erected improvements on the land of the value of $1000, and remained in possession until his death. To the best of the petitioner's information there remains an unpaid balance of $50 of the purchase-money, which the petitioner has tendered to the defendants, except Emma Lane, which tender was refused, but which the petitioner desires to make continuing and deposits the money in court as a tender. The petition alleges that the defendant, Emma Lane, had been living in the house with Roman Brown prior to his death, and that she has remained on the premises since his death without authority and without right and solely as a trespasser, and has deprived the petitioner of possession. The petitioner is informed and alleges that the defendant, Emma Lane, has made some of the payments on the purchase-price, but that such payments were made without any obligation or right upon her part and were, therefore, voluntary. The reasonable rental value of the premises is $15 per month. The prayers were that the defendants, except Emma Lane, be required by the judgment of the court to convey to the petitioner the property involved; that the defendant, Emma Lane, be required to surrender possession to the petitioner as administratrix; and that the petitioner as an individual have judgment against Emma Lane for the rent of the premises since the death of Roman Brown.
The defendant, Emma Lane, answered, alleging that she had lived with Roman Brown for a period of approximately eighteen years, but had not been married to him. She was with him when the land in dispute was contracted for, and they both furnished part of the original $50 payment thereon. She had made all subsequent payments, had borne all expenses of erecting the improvements on the land, and was entitled to have title to the land, and she prayed that the court decree the title vested in her.
The other defendants answered, jointly admitting the contract between themselves and Roman Brown as alleged in the petition, and admitting that Roman Brown had paid the first $50 on the purchase-price and continued payments thereon until his death, but stating that the defendant, Emma Lane, had thereafter completed payment of the purchase-money. These defendants did not know who had supplied the money with which she made such payments. They admitted that the full purchase-price had been paid, and that under their contract they were obligated to convey the *Page 618 
land in question and were ready and willing to convey the same to the person entitled thereto.
Upon the trial the petitioner testified as follows: "My father's name was Roman Brown. He died June 18, 1944. His wife was dead when he died. She died in 1924. I don't have any brothers and sisters. I am the sole heir of my father. I have been appointed administratrix by the ordinary to handle his estate. The property involved in this case is located 1428 Ninth Avenue, outside the city limits. My father was working for several years before he died. He used to work for Mr. Hernley on the Milledgeville Road, and earned $20 per week working there. This particular lot was purchased August 19, 1943. I helped to pay for this lot. I gave $5 a week. I started giving that money in August of 1943 and went until May, 1944. He died June 18, 1944. I gave $66 after he died. I got $132 from the Social Security and gave the $66 from that money. I gave the money to Emma Lane, the defendant in this case, and I told her to put it on the house and finish paying for it. She received other money from insurance in the Metropolitan Insurance Company. This amount was $265. She also received $75 from the Bankers Insurance Company. Emma Lane worked, working at one place around hereto the Presbyterian Church. Ever now and then is all I know of here having a regular job. I don't know whether she worked six days a week or five days a week. I don't know what she got paid. Roman Brown made the statement to me that this lot was going to cost of $200. He told me he was buying the lot because he knowed he was going to get old and disabled to work, and he would have a home to live in. As to the agreement we had about the money I was paying him, he said he was going to build a room on there for me to live with him. I went to live in the house in May, 1944, and lived with him until he died, and then I left. Nobody made it unpleasant for me there. I just didn't like to live there and didn't want to. My father was sick for one month and three weeks before he died June 18, 1944. He bought this lot as I have testified in August, 1943. I moved out of the house in June. The house wasn't built at the time he bought it. He didn't do the carpenter work and the masonry work on it. He had the mens to do the work. Ben Marshall is the one who built the house. The brick mason was Eddie Robinson. There was no electrician. The house *Page 619 
wasn't wired when he died. Mr. Rosier didn't do the work there. As to where the lumber came from, he said he bought some from Marshall. Marshall got some of the lumber for him. No, he didn't have a bank account. He worked for Mr. Hernley up there. Mr. Hernley was his employed for the past ten or fifteen years. He had no other job. Yes, he had an automobile. Yes, he was riding around in that automobile pretty regularly to work, and on Saturdays and Sundays, too. Yes, he drank some. During the last year or so he didn't work regularly. He was sick some days and didn't work. During that time Emma Lane, or Emma Brown, did work some. She went by the name of Emma Brown. Yes, she lived with my father for the past eighteen years. She had a son that was staying there in the house, too. He worked out at Camp Gordon. He used to be in the C. C. Camp. He didn't live in the new house my father built. He lived in the old house out at Babcock Wilcox. Emma Lane did not tell me she was married to Roman Brown. As to whether she told me she was married, she told me she was married to Ed Lynn. I went in the house to live in May, and my father died in June. Yes, I stayed in there about a month."
The witness for the petitioner, Cora Norman, testified as follows: "I live at 2052 Milledgeville Road. I know Emma Lane. I knew Roman Brown before he died. I was neighbors of these two. I have been knowing them a long time, ever since I moved there. Emma Lane worked sometimes, and took in washing and ironing sometimes. She didn't work regularly like a heap of women, but she worked washing and ironing. No, she never told me how much she was paid, and I didn't know how much. When I was working at the Presbyterian Church they was paying me $12 every two weeks. I don't know what they paid her. I knew about Roman Brown buying this piece of property. I was the one sold it to him. First I asked her, did she want to buy a lot, and she told me to see him, and I asked him and he decided to buy it, and he paid $50 down on the lot and I tried to sell him the one next to it, and he said, `No,' he wouldn't buy it because he wanted to build this house. After he built the house I spoke to him again, and he said he didn't want to buy it because he wanted to put his daughter a room on there and he wouldn't be able to buy the other lot."
The parties stipulated upon the trial that the sole issue was *Page 620 
whether the title should be made to the estate of Roman Brown or to Emma Lane, and that the verdict of the jury should be for one of the claimants.
The jury returned a general verdict in favor of the petitioner. The exception here is to the judgment overruling the defendants' amended motion for new trial.
1. The allegations and evidence made a proper case for specific performance and the other relief sought. Code, § 37-802;Simpson v. Fox, 69 Ga. 753. While the evidence introduced by the defendant, Emma Lane, was sufficient to have authorized a finding that she supplied all the funds with which the improvements were made and the purchase-money with the exception of an undefined portion of the original cash payment of $50, such finding was not demanded by the evidence; and since she did not seek a judgment for this amount or to impress the property with a trust for these funds, but by stipulation of the parties the sole issue submitted to the jury was whether she or the petitioner was entitled to a decree of title under the evidence, we examine the evidence to determine if it was sufficient to support the verdict in favor of the petitioner. Bearing upon this question, the person who made the sale testified positively that the contract was made with the petitioner's intestate, Roman Brown, and that he made the original payment of $50 thereon. The receipt for this payment issued by the defendants was as follows: "4-17-43. Received of Roman Brown the sum of $50 as down payment of lot 32, block 10, balance $150." The defendant sellers admitted in their answer that they had sold the property involved to Roman Brown and received payments on the purchase-money from him until his death. These facts fully authorized the jury to find that the property in question had been purchased by Roman Brown; and the admission of the defendants that the full purchase-price had been paid was sufficient to authorize the jury to find that Roman Brown or this representative was entitled under the contract to have the property conveyed to him or his estate. The verdict in favor of the petitioner being thus authorized by the evidence, the mere fact that Emma Lane introduced *Page 621 
evidence which in part or as a whole contradicted the evidence introduced by the petitioner would not constitute a valid reason for setting aside the verdict in favor of the petitioner upon the ground that it was without evidence to support it. The general grounds of the motion for new trial are without merit.
2. The two special grounds of the motion for new trial except to rulings upon the trial which allowed the petitioner, while testifying as a witness in her own behalf, to relate conversations and transactions which she had had with her intestate, Roman Brown. The objection interposed was that she was a party to the case, and therefore incompetent to testify to any transactions with the deceased. The plaintiff in error cites in support of these grounds Code, § 38-1603; Killian v. Banks,103 Ga. 245 (29 S.E. 971); Willis v. Bonner, 136 Ga. 720
(71 S.E. 1048); Brooks v. Brooks, 185 Ga. 549, 553
(195 S.E. 869); Terry v. Fickett, 199 Ga. 30, 36 (33 S.E.2d 163). The law cited and relied upon is to the effect that, where a suit is instituted or defended by a representative of a deceased person, the opposite party is not allowed upon the trial of such a case to testify to transactions had with the deceased. The rule of law invoked is sound and controlling when applicable. The facts in the present case do not make a case where that rule can be applied. The petitioner here, although suing in her individual and representative capacities, was not as to her intestate an opposite party. Her interests as an individual and as an administratrix were the same. The rule invoked by the movant had no application to the testimony of the petitioner which is complained of in these grounds of the motion. Moore v.Cline, 115 Ga. 405 (41 S.E. 614); May v. Leverette,164 Ga. 552 (139 S.E. 31); Winkles v. Drake, 165 Ga. 335
(141 S.E. 67); Terry v. Fickett, supra. There is no merit in the special grounds.
Judgment affirmed. All the Justices concur.