47406. THOMPSON v. MASLIA et al.

47407. DiMAURO et al. v. MASLIA et al.

EBERHARDT, Presiding Judge. For decision is an appeal from the confirmation of a debt deed foreclosure sale in proceedings brought under the provisions of *Code Ann.* § 67-1503 (Ga. L. 1935, p. 381). In case No. 47407, Thompson, one of four respondents involved in the court below, has appealed, he contending the evidence concerning "the true market value" was such that the trial judge erred in confirming the sale. Such confirmation is a condition precedent to the creditor being permitted to sue the debtor for any money deficiency resulting from the sale. *Code Ann.* § 67-1504. This opinion is limited to that question which is presented here under an immediate review certificate.

In Case No. 47407, two of the other three defendants filed a notice of appeal but took no steps to perfect their appeal.

Maslia and Sater (hereafter referred to as appellees) were owners and builders of a sixteen-unit apartment house at 127 Eleventh Street, N. E., in Atlanta. Upon completion in December, 1963, they had obtained a first loan deed from Fulton Federal Savings & Loan Association for $88,000. On August 3, 1970, they sold this property to DiMauro for $115,000, of which $70,774.62 was represented by assumption of the outstanding Fulton Federal loan deed, $4,490.38 was cash, and the balance of $34,400 was secured by a purchase money subordinate loan deed. Buyer deeded the property to T. R. G. Corporation which in turn on August 3, 1971, conveyed the property to Hamilton and Thompson. When Fulton Federal advertised foreclosure for October, 1971 because of defaults, appellees paid $6,229.65 on this prior loan deed, which halted completion of foreclosure, and themselves instituted foreclosure of their purchase money second loan deed. At their foreclosure sale on November 2, 1971, appellees through their attorney purchased the property for a recited consideration of $1,000 cash plus assump-

tion of amounts owing on the prior security instrument and outstanding unpaid taxes so that the gross price is averred to be $74,414.95.

The instant proceeding for confirmation was then filed in conformity with *Code Ann.* § 67-1503 (Ga. L. 1935, p. 381), naming DiMauro, T. R. G. Corporation and Thompson and Hamilton as respondents. Intervention filed by an unhappy tenant resulting in appointment of a receiver is not involved in this appeal, nor are certain damage claims recited in an amendment by appellees adding a second count to the petition for confirmation, left pending by the denial of a motion to dismiss the amendment.

At the first hearing on January 14, 1972, before Hon. G. Ernest Tidwell, the evidence for appellees consisted of their attorney's testimony (his qualifications were "approximately 15 years experience in real estate, having closed, I'd say, at least 1,000 loans and sales and have bought and sold real estate for my own, for my own account, and for accounts of others"), the realtor who had managed the property for appellees, and a Fulton Federal Savings & Loan official, along with 72 pages of documents. The adverse parties relied upon testimony of an experienced appraiser and some of appellees' documents. These were the 1963 appraisal of Fulton Federal at $126,000, another Fulton Federal appraisal dated September 21, 1971, at $80,000, the amount of insurance procured in March, 1970 ($133,000 building, $29,000 rental income), the construction cost of 1963 and present value of the land, and the purchase by Hamilton and Thompson on August 3, 1971 for $130,000. None of the respondents testified.

One of the appellees' witnesses stated the property "had been completely deteriorated. There has been no maintenance on the building that I can see. The air conditioning and heating systems were not in operation . . . There are broken windows, broken doors, the building has been partitioned off so it is really like a boarding house rather than an apartment building now." This testimony

was not contradicted by respondents but in other respects there were conflicts, particularly as to the basic reason for the difference in estimating fair market value. Whereas respondents' appraiser pointed to the nearby development of Colony Square as increasing his valuation, the appellees' witness swore "Eleventh Street and Peachtree area has really been depreciating in the last couple of years, the last year and a half or so. There are lots of street people, drifters. It's been known to be the center of the drug market, and I believe that's one of the reasons that they have made this boy's drug lodge or whatever it is living there."

Attorney for appellees offered in behalf of his clients three alternatives: (a) readvertise foreclosure at expense of the other parties, (b) convey the property to respondents for the amount of appellees' bid, or (c) to reconvey the property and reinstate the second mortgage upon repayment of the amounts which appellees had paid Fulton Federal to cure its delinquency and the delinquent payments due on the second security. Respondents were unwilling to accept either alternative.

Judge Tidwell entered two orders as to this hearing. In the first, dated January 24, 1972, he overruled a constitutional attack made on the statute by appellees and confirmed the sale. The other order, dated January 26, 1972, was divided into "Findings of Fact" which recited the property was sold in compliance with the law and that the price "was the true market value on the date of said sale" and under the caption of "conclusions of law" confirmed the sale. A notice of appeal was filed as to these orders by Thompson, but later withdrawn in writing.

Thereafter an unexpected development occurred when a realtor tendered a sale contract for $95,000 from an outside party. The term of court had not expired, and the defendants filed motions "to set aside, revise and vacate the prior orders and judgments" on the basis of this alleged newly discovered evidence. Appellees moved to dismiss the motions for reconsideration. *The orders were*

*never vacated,* but Judge Tidwell proceeded with another full-scale hearing on March 1, 1972, and entered a series of additional orders and judgments on March 3 which included denying the motion to reconsider and overruling appellees' motion to dismiss. Again judgment confirming the sale was entered. Thereafter a clarification order was entered March 10, in which the court concluded: "(1) The court finds that the property involved herein was sold in compliance with the applicable provisions of law; (2) The court finds that the price for which the subject property was sold was the true market value of said property; (3) The court therefore confirms the sale in question pursuant to Ga. Code Ann. § 67-1504 and finds said statute to be constitutional; (4) This order shall supplement this court's orders of January 24, 1972, and January 26, 1972, and give nunc pro tunc effect to defendants' certificate of immediate review."

In Case No. 47406, Thompson filed his appeal with his enumerations of error attacking separately each of the court orders. The complete record of 146 pages plus the transcripts of the two hearings are on file in this case along with brief for Thompson.

In Case No. 47407, DiMauro and T. R. G. Corporation filed a separate notice of appeal with direction to the court clerk to "transmit the record and transcript as set out by defendant, Wayne C. Thompson, in his notice of appeal."

No cross appeal was filed by appellees to the order dated March 3 overruling their motion to dismiss the application for a reopening and revision of the original orders of January 24 and 26, but any error in refusing to dismiss became moot upon denial of the application. *Held:*

1. Appellants DiMauro and T. R. G. Corporation in Case No. 47407 having failed to file an enumeration of errors or brief, and having failed to appear, in person or by counsel, their appeal was dismissed for want of prosecution upon its call on the September calendar. Cf. *Griffith v. Mitchell,* 117 Ga. 476, 478 (43 SE 742).

2. When in 1935 the General Assembly enacted "An Act to

provide for confirmation of sales under foreclosure proceedings on real estate, to limit and abate deficiency judgments in suits and foreclosure proceedings on debts secured by mortgages, security deeds, and other lien contracts on real estate, to provide for advertisement of foreclosure sales, and other purposes" (Ga. L. 1935, p. 381), our country was emerging from a disastrous depression during which many mortgagors had not only lost their property through foreclosure but were forced to bankrupt against deficiency judgments after foreclosure sales in which mortgagees usually acquired the property at nominal or depressed bids. Although the Act as passed contained only two sections, the codifiers divided Section One into three Code Sections,[1] for our Annotated Code, these being now codified as §§ 67-1503, 67-1504 and 67-1505 and codified the second Section as § 67-1506.

The key portion with which we must deal is in haec verbae: "The court shall require evidence to show the true market value of the property sold under such powers, and shall not confirm the sale unless he is satisfied the property so sold brought its true market value on such foreclosure sale." This language places the burden of proof upon the mortgagee and also vests considerable discretion in the judge. The breadth of this discretion is shown in the following section which not only requires the court to "pass upon the legality of the notice, advertisement, and regularity of the sale" but permits him "for good cause shown" to order a resale of the property.

The evidence presented at the initial hearing of January 14 warranted the orders of January 24 and 26.

3. Did the trial judge have the authority to rule upon a

---

[1]This law was first placed in the unofficial Annotated Code as one section numbered 37-608 under the title "Equity" but after *Dockery v. Parks,* 224 Ga. 369 (162 SE2d 332) had ruled the action was not an equitable proceeding, the annotators made the division into three separate sections for placement in the foreclosure chapter of Title 67.

motion for revision during the same term? The answer clearly is in the affirmative, where the judgment is not predicated upon the verdict of a jury.[2] "A trial judge has the power during the same term of court at which a judgment is rendered to revise, correct, revoke, modify, or vacate such judgment, even upon his own motion, for the purpose of promoting justice and in the exercise of a sound legal discretion." *Tyler v. Eubanks,* 207 Ga. 46 (1) (60 SE2d 130). See also *Deen v. Baxley State Bank,* 192 Ga. 300 (15 SE2d 194); *Lawson v. Haygood,* 202 Ga. 501 (3) (43 SE2d 649); *Dover v. Dover,* 205 Ga. 241 (2) (53 SE2d 492); *Kimsey v. Caudell,* 109 Ga. App. 271 (2) (135 SE2d 903). The authority does exist where the judge sits as the jury in determining issues of fact. *Whitlock v. Wilson,* 79 Ga. App. 747 (54 SE2d 474); *Godby v. Hein,* 107 Ga. App. 481, 482 (130 SE2d 511). This right to reconsider a judgment during the term is an inherent power in the court and is still the rule since passage of our Civil Practice Act. *Martin v. General Motors Corp.,* 226 Ga. 860 (178 SE2d 183).

4. On the second hearing there was again extensive evidence on the matter of market value, some of it dealing with valuations and appraisals made prior to the foreclosure and some of it to occurrences afterward, including the alleged newly discovered evidence. The court again concluded that the property had been sold for its true market value at the foreclosure sale and, accordingly, entered another order confirming the sale.

---

[2]Where the judgment is predicated upon a jury verdict, the court has no such plenary right to vacate, revise, etc. To set aside that kind of judgment the verdict must also be set aside, except for defects appearing on the face of the record, the remedy is by motion for new trial (*Georgia R. & Elec. Co. v. Hamer,* 1 Ga. App. 673 (58 SE 54); *Grogan v. Deraney,* 38 Ga. App. 287, 290 (143 SE 912)), or by a direct appeal under Ga. L. 1965, pp. 18, 20; Ga. L. 1966, pp. 493, 494 (*Code Ann.* § 6-702).

The judge sits as a trior of fact, and his findings and conclusions have the effect of a jury verdict. "Where the trial judge, sitting as the trior of the facts, hears the evidence, his finding based upon conflicting evidence is analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. [Cits.]" *West v. West,* 228 Ga. 397 (1) (185 SE2d 763). What value is, or may have been, is a question of fact to be resolved as others are. In so doing the trior of fact (here the judge) is the judge of the credibility of the witnesses and of the weight to be given the evidence. *Mustang Transportation v. W. W. Lowe & Sons,* 123 Ga. App. 350 (3) (181 SE2d 85).

We judicially know that values do fluctuate, sometimes up and sometimes down. If this were not so, proof of the market value of any item at a given time would suffice for all time to come. Real estate, as well as stocks and bonds, fluctuates in value, albeit at a less rapid pace. What it may have brought or what it may have been regarded as being worth on the market at times relatively close to the date of sale may be considered as aids in arriving at market value *at the time of sale*—which is what the court is charged with determining in granting or denying an order of confirmation. But at last value on the date of sale is a factual question to be resolved by the trior of facts.

There was ample proof from which the judge could and did find the true market value on the date of sale. We should not disturb his findings merely because there is in the record evidence that at a time three months after the sale it may have acquired a different value. If that were true a confirmation could always be attacked because of a subsequent change in value.

As a general rule the price brought at a public sale, after proper and lawful advertisement, is prima facie the market value of the property sold, absent anything to indicate that there was chilling of the bidding, fraud, or the like adversely affecting the sale. Cf. *Bearden v. General*

*Motors Accept. Corp.,* 122 Ga. App. 180 (176 SE2d 652). "Evidence of what land was sold for per acre at sheriff's sale was admissible on the question of the value of such land." *May v. Leverette,* 164 Ga. 552 (11) (139 SE 31). But under the terms of the statute here the applicant may not rely solely on such a prima facie showing; he must introduce evidence showing the value of the property at the time of sale. Here he did so. The court concluded that the sale had been properly and lawfully advertised and the sale properly conducted, and that the price brought represented the true market value.

We cannot conclude that the findings and conclusions of the court are without evidence to support them, for there is ample evidence supporting them. The findings should not be disturbed.

*Judgments affirmed. Bell, C. J., Hall, P. J., Pannell, Deen, Evans and Stolz, JJ., concur. Quillian and Clark, JJ., dissent.*

ARGUED SEPTEMBER 13, 1972—DECIDED NOVEMBER 21, 1972— REHEARING DENIED DECEMBER 19, 1972—▮▮▮▮▮▮▮▮

*Powell, Goldstein, Frazer & Murphy, Larry I. Bogart, Stuart E. Eizenstat,* for appellant.

*Marvin P. Nodvin, Ira S. Zuckerman,* for appellees.

CLARK, Judge, dissenting. I find myself in disagreement with my colleagues as to Division 4 of the majority opinion.

Having exercised his discretion to reopen the matter during the same term at which the original orders were entered and having conducted a new hearing supplementary to the original trial for consideration of additional evidence, the judge below was then further required to exercise sound legal discretion to determine if the new evidence, which was a sale completed by appellees for $95,000 warranted ratification of the previous confirmation. I recognize the extent of discretion here vested in the trial judge where the statute expressly requires the court must be "satisfied the

property so sold brought the true market value on such foreclosure sale." Nevertheless, it has been held that such vast discretion when exercised in confirmation of judicial sales must be "sound legal discretion." *Hall v. Taylor*, 133 Ga. 606 (66 SE 478); *Wingfield v. Bennett*, 36 Ga. App. 27 (134 SE 840).

What is encompassed in the term "true market value?" As is stated at page 60 in "The Appraisal of Real Estate" (5th Ed., 1967), the authoritative manual published by American Institute of Real Estate Appraisal, there are three methods of making such estimate: Cost of reproduction less depreciation from deterioration and functional and economic obsolescence, capitalization of net income, and comparable sales. Here within less than three months of the foreclosure sale there was an arm's length sale of the specific parcel for $95,000 between a willing seller and a willing buyer, neither being under abnormal pressure. Such sales must be regarded as establishing the true market value. Applying the yard-stick of "sound legal discretion," I regard it to be necessary to hold adversely to that portion of the second confirmation order of March 3 which in effect disregarded this consummated sale.

I recognize there can be argued an inconsistency exists in my agreeing with the majority as to its ruling at the conclusion of the first hearing and urging a reversal as to the second. I see no inconsistency, as the record of the first hearing supports the judge's ruling that $74,414.95 was the true market value on the evidence then before the court. But with the matter reopened and the evidence presented showing an arm's length sale closed for $95,000 within less than three months of the foreclosure sale, that development in the record changes the outcome. The fact that it occurred post hoc does not affect the situation because this occurred while the matter was still within the breast of the court.

Appellees' advocate ably articulates the legal locution that he who seeks equity must do equity. He points to the manner in which his clients magnanimously offered three alternatives to the opposite parties as contrasted with the

manner in which adversaries permitted the property to deteriorate, failed to make the mortgage payments while collecting rents, transferred the property to a dummy corporation, and two of the parties having purchased the realty when the loan deeds were in default. To such contention based upon meting out justice in accordance with "Aristotelian principles of retribution and reciprocity,"[1] I point out that in *Dockery v. Parks,* 224 Ga. 369 (162 SE2d 332) the Supreme Court rules this procedure sub judice as not being equitable in nature. The actions of the parties, whether commendable or reprehensible, cannot change the fact that the record of the re-opened hearing shows $95,000 to be the true market value, a sum almost $20,000 in excess of the foreclosure sale price. This is particularly true in the light of the history and purpose of the statute which was aimed at preventing unfortunate mortgagors from being saddled with unwarranted deficiency judgments in addition to loss of the mortgaged property.

I am authorized to state that Judge Quillian concurs in this dissent.

---

[1]This phrase is copied from p. 460 of Kennedy Justice by Victor S. Navasky (N. Y., Atheneum—1971), a study of the administration of the office of United States Attorney General during the administration of Robert F. Kennedy.