51791. AARON v. LIFE INSURANCE COMPANY OF GEORGIA.

STOLZ, Judge.

This case is an appeal from an order confirming the foreclosure sale of real estate.

1. Error is contended on the basis that the superior court applied the standard of "fair market value" of the real estate rather than "true market value" as contained in Code Ann. § 67-1504 (Ga. L. 1935, p. 381). These terms have been used interchangeably by our appellate courts. See *Thompson v. Maslia,* 127 Ga. App. 758 (195 SE2d 238). Moreover, the two terms were used interchangeably by the appraisers at the confirmation hearing. The trial judge, in his confirmation order, found the property brought its "fair and true market value."

2. The sole issue in this confirmation proceeding was the valuation of the real estate as of the date of the sale. Consequently, the superior court judge did not err in excluding evidence regarding an escrow deposit of

$27,000 made in connection with the origination of the loan to assure the completion of certain work, after which the funds were to be returned to the appellant. This is not to say that such evidence would not be relevant in some subsequent action between the parties.

*Judgment affirmed. Bell, C. J., concurs. Clark, J., concurs specially.*

ARGUED FEBRUARY 2, 1976 — DECIDED MARCH 10, 1976 — REHEARING DENIED MARCH 31, 1976 — 

*Kaler, Karesh & Frankel, Samuel N. Frankel, Ira L. Rachelson, David I. Funk,* for appellant.

*Gambrell, Russell, Killorin & Forbes, Edward W. Killorin, Thomas C. Gilliland,* for appellee.

CLARK, Judge, concurring specially.

The writer agrees fully with the majority opinion but is motivated to add a special concurring opinion for two reasons, both of which are personal in nature. The first is to pay my tribute to baseball's home-run champion, the appellant. The second is in fulfillment of my effort to make appellate opinions more interesting as was asserted by Alan Barth in his excellent book "Prophets With Honor" (sub-titled "Great Dissents and Great Dissenters in the Supreme Court"), "legal writing does not have to be arid reading." Accordingly, I submit my version of this appeal:

"Hank Aaron struck out!" Such sad seldom-heard sports sentiment suits baseball's superlative slugger in his appeal from an adverse decision by the umpire (judge below). His present plight stems from foreclosure on January 7, 1975, by the Life Insurance Company of Georgia of a loan deed dated December 31, 1973, on the home-run champion's office-park project in Gwinnett County which secured a personal loan of one million dollars. When the lender brought an application for confirmation of the sale, Hammerin' Hank filed his protest in order to prevent a subsequent deficiency. After a lengthy hearing concerning the value of the property, the trial judge entered an order of confirmation. This appeal followed.

With considerable managerial savvy, appellant's able advocates devised defense strategy which adversary attorneys assert to be "novel." The writer regards the legal approach by Aaron's attorneys as not only being innovative, but also imaginative, inventive, and ingenious.

Their contention is that "true market value, not fair market value, is the standard to be applied in the Court's determination of whether or not to confirm a sale." Appellant's attorneys argue that the key word used by our sagacious solons in enacting the 1935 statute was "true" rather than "fair." This argument is based on Code Ann. § 67-1504 which reads: "The court shall require evidence to show the true market value of the property sold under such powers, and shall not confirm the sale unless he is satisfied the property so sold brought its true market value on such foreclosure sale."

Appellant's attorneys recognize that the terms "fair market value" and "true market value" have been used interchangeably by our appellate courts.[1] We think this practice—never heretofore questioned—established that there is no semantic difference. Undoubtedly, the General Assembly of our nation's depression period used the word "true" as being synonymous with "fair" and chose that adjective in recognition that foreclosure sales generally bring depressed prices rather than the normal arms-length fair market value. See *Richardson v. John Hancock Mut. Life Ins. Co.,* 167 Ga. 340 (5) (145 SE 448) for a judicial definition.

In arguing further that the legislature did not intend to equate "true market value" with "fair market value," appellant points out that at the time the loan was made, the property was appraised at $1,489,652, whereas, at the foreclosure sale only one year and seven days later, the top bid for $992,942.24 (made by the lender) shows a 34% decline amounting to a dollar drop of $496,709.56. Appellant contends this reduction is due to intervening adverse economic conditions and therefore does not reflect

---

[1]E.g., see *Giordano v. Stubbs,* 228 Ga. 75 (184 SE2d 165).

the "true" market value of the property. Unfortunately for the borrower in this recession situation, the courts have ruled that it is the value as of the date of the foreclosure sale that must be accepted. Thus, in *Thompson v. Maslia,* 127 Ga. App. 758 (195 SE2d 328) the writer of this opinion did not get to first base in a 7 to 2 decision that disregarded a sales price obtained three months after the foreclosure even though this later price was substantially higher.

Fair play to the lender team requires us to note that the company bid the amount of the principal owing to them even though this exceeded the appraisals which they had obtained. Their evidence amply supported their assertions—and throughout the testimony for both parties the appraisers used the terms "true market value" and "fair market value" as being similar. Nowhere did they indicate any difference between their treatment of the two phrases. We must also recognize the binding effect of the ruling in *Classic Enterprises v. Continental Mortgage Investors,* 135 Ga. App. 105 (2) (217 SE2d 411) that "In confirmation proceedings the trial judge is the trier of fact. He presides as both judge and jury and his findings of fact shall not be set aside unless clearly errone-ous. [Cits.]" In short, he symbolizes the umpire, subject to this court having the power to reverse upon a study of the television replay.

A personal note: having followed Henry Aaron's illustrious career since his first appearance when he would hit game winning home runs for Jacksonville against our Savannah Sally League aggregation, and, like all sportsmen, having admired his achievements since his initial appearance, the writer deems it appropriate to conclude with the final stanza of the immortal poem, "Casey at the Bat" by Ernest Lawrence Thayer[2] with a substitution of the name of our pro-tagonist:

"Oh, somewhere in this favored land the sun is shining bright;

---

[2] *Best Loved Poems of the American People* (Garden Publishing Co., 1936) p. 284.

The band is playing somewhere, and somewhere hearts
are light;
And somewhere men are laughing, and somewhere
children shout;
But there is no joy in Mudville; Mighty Aaron has struck
out."